Lee T. **LOVALLO**, Petitioner,

v.

Robert F. **FROEHLKE**, Secretary of the Army, and Major General Walter M. Higgins, Commanding General of Fort Hamilton Complex, New York, Respondents.

Civ. No. 1972–26.

United States District Court,
W. D. New York.

June 20, 1972.

Charles J. Fiorella, Buffalo, N. Y., for petitioner.

C. Donald O'Connor, Acting U. S. Atty. (Philip B. Abramowitz, Asst. U. S. Atty., of counsel), Buffalo, N. Y., and Royce C. Lamberth, Atty., Litigation Division, Personnel Affairs Branch, Office of The Judge Advocate Gen., Headquarters, Dept. of the Army, Washington, D. C., for the Government.

CURTIN, District Judge.

Both sides have moved for summary judgment, the respondents formally by filing a motion and the petitioner informally during the course of oral argument. The court has considered the affidavits and exhibits and has determined that there is no dispute about the facts in the case.

On December 10, 1968, Lee Lovallo enlisted in the Regular Army for a term of three years, with an initial assignment option for the 26th Army Band at Fort Wadsworth, New York. At the time of his enlistment, he executed an "Acknowledgement of Service Obligation under Military Selective Service Act of 1967," which read as follows:

I, LEE THEODORE LOVALLO, a citizen of the United States . . . for the purpose of amplifying the statements made in the enlistment contract this date, do hereby acknowledge that I have voluntarily enlisted this 10 day of December, for a period of three years in the Regular Army of the United States of America. I understand that upon release from active duty, I will, if qualified, be transferred to the Army Reserves to complete my six-year service obligation. I further understand that if I am credited with three years active duty, I will not be involuntarily assigned to reserve

unit nor will I be required to participate in unit training.[1]

In August, 1970, while still serving as a member of the 26th Army Band, Lovallo submitted an application for discharge as a conscientious objector. His application was disapproved by the Army. After exhausting his in-service remedies, the petitioner filed an application for a writ of habeas corpus in the United States District Court for the Eastern District of New York on January 14, 1971. On February 4, 1971, District Court Judge Jack B. Weinstein, concluding that there was no basis in fact for the Army's disapproval of Lovallo's application, ordered that "petitioner's application for a writ of habeas corpus is granted." After a stay granted by Judge Weinstein and a further stay consented to by counsel, the Court of Appeals granted an additional stay on February 8, 1971. When counsel for the Department of the Army learned of the stay, he informed the Assistant United States Attorney that the action in obtaining a stay order was contrary to the policy of the Department of the Army and Department of Justice.[2] Upon application of the government, without notice to the petitioner, the stay was vacated by the Court of Appeals on or about February 12, 1971.

On February 23, 1971, Headquarters, Department of the Army, directed Lovallo's release from custody and control of the Army pursuant to paragraph 5–12, Army Regulations 635–200[3] and the order of the United States District Court for the Eastern District of New York. Apparently because Lovallo was on a short leave, his actual release was not accomplished until March 9, 1971, when the Commanding General at Fort Hamilton issued an order, "By direction of the Secretary of the Army (Lee Lovallo) is Released from Custody and Control of the Army as indicated," citing as authority "Para 5–12 AR 635–200 and order US District Court Eastern District of N. Y."

1. Title 10, United States Code, Section 651 provides:
    (a) Each male person who after August 9, 1955, becomes a member of an armed force before his twenty-sixth birthday, other than a person deferred under the next to the last sentence of section 456(d) (1) of title 50, appendix, shall serve in the armed forces for a total of six years, unless he is sooner discharged because of personal hardship under regulations prescribed by the Secretary of Defense or, if he is a member of the Coast Guard while it is not operating as a service in the Navy, by the Secretary of the Treasury. Any part of such service that is not active duty or is active duty for training shall be performed in a reserve component.
    (b) Each person covered by subsection (a) who is not a Reserve, and who is qualified, shall, upon his release from active duty, be transferred to a reserve component of his armed force to complete the service required by subsection (a).

2. There are no regulations or formal agreements setting forth this policy.

3. Paragraph 5–12, AR 635–200 provides:
    The discharge or release of an individual from the Army may be ordered by a U. S. Court or judge thereof. The officer upon whom such an order or writ is served will report immediately to The Judge Advocate General, as directed in MCM 1951, paragraph 217, and AR 27–5, and will notify The Adjutant General, Department of the Army, ATTN: AGPO–SS, Washington, D.C., who will take appropriate action to direct the discharge, release from active military service, or release from military control of the individual concerned. The notification to The Adjutant General will be by electrical message and will consist of a copy of the Advisory Report furnished The Judge Advocate General in accordance with AR 27–40. Authority (AR 635–200) and SPN 316 for separation will be included in directives or orders directing individuals to report to the appropriate transfer activity or unit personnel section designated to accomplish transfer processing for discharge or release from active duty, as appropriate. Similar action will be taken upon the final judicial determination of a convening authority of a general or special court-martial, a law officer, a president of a special court-martial, or military appellate agency that an individual is not currently a member of the Army.

Thereafter, on May 24, 1971, the Court of Appeals reversed the trial court, dismissed petitioner's writ, and directed that "the order of the district court is reversed and the petition is dismissed." Lovallo v. Resor, 443 F.2d 1262 (2d Cir. 1971). Lovallo did not apply for a writ of certiorari to the Supreme Court. No orders were issued to him during this period because, in other cases where orders were issued under similar circumstances, an application for a stay of the orders followed. Counsel for the Department of the Army related that, since there is no specific procedure in any regulation for ordering an individual returned to active military control, each case must be handled on an individual basis. There followed discussion between authorized representatives of the Adjutant General, the Judge Advocate General and the Chief of Personnel Operations, all acting in behalf of the Secretary of the Army. The representatives determined that Lovallo should be returned to military duty primarily because he had served only two years and three months of his three-year active duty obligation.

Finally, on December 3, 1971, a message was dispatched by Headquarters directing the Commanding General at Fort Hamilton to order Lovallo to report to duty. On December 10, 1971, orders were issued at Fort Hamilton directing Lovallo to report to Fort Dix on December 17, 1971. These orders were received by Lovallo on December 16. Relying upon the message from Army Headquarters, the orders to Lovallo provided: "In computing (Lovallo's) period of service the period from 9 Mar 71 to 16 Dec 71 will be excluded."

After this lawsuit was instituted and in order to preserve the status quo pending the outcome, a temporary restraining order was entered on notice, with the consent of the respondents, on January 11, 1972. The order has been extended by consent until the present.

In his complaint, the petitioner sought a combination of distinct forms of relief, including mandamus, preliminary and permanent injunction, habeas corpus and declaratory judgment. Petitioner contends that the active duty order is illegal since he was separated from the service on March 9, 1971 and his contractual obligation terminated December 9, 1971, one day before the order was issued and six days before he received it. On February 15, 1972 the respondents filed the motion requesting an order dismissing the complaint.

Because it appeared to the court at that point that the papers filed raised a number of questions which needed to be resolved, the court made an order on March 30, 1972 requiring additional briefs and affidavits, if necessary, to be filed. The most important questions to be decided are whether this court has jurisdiction to entertain a habeas corpus application, and whether a mandamus action is available to the petitioner. Each side filed additional briefs and the court heard oral argument on May 19, 1972.

■ It is now clear that there is no habeas corpus jurisdiction in this district because Lovallo, unlike the petitioners in Strait v. Laird, 406 U.S. 341, 92 S.Ct. 1693, 32 L.Ed.2d 141 (1972), and Arlen v. Laird, 451 F.2d 684 (2d Cir. 1971), never had any contacts with the military here. Since his alleged custodians are elsewhere, he must sue in habeas corpus in the district of custody. Schlanger v. Seamans, 401 U.S. 487, 91 S.Ct. 995, 28 L.Ed.2d 251 (1971).

■ Petitioner also asserts that, pursuant to Title 28, United States Code, Section 1361, a mandamus action is available to him in this district. As the court has already noted in its original order, however, mandamus is an extraordinary remedy to be used only in the clearest and most compelling of cases. Mandamus relief is a matter of judicial discretion. Before the writ of mandamus may issue, three elements must co-exist: (1) a clear right of petitioner to the relief sought; (2) a clear duty on the part of

the respondent to do the act in question; and (3) no other adequate remedy available. Carter v. Seamans, 411 F.2d 767 (5th Cir. 1969). Furthermore, mandamus may not be invoked to "direct the manner in which discretionary acts are to be performed." McQueary v. Laird, 449 F.2d 608, 611 (10th Cir. 1971).

The government vigorously denies that the petitioner has satisfied the first two elements, and asserts that the petitioner has an adequate remedy in habeas corpus in the District Court of New Jersey after he has reported to duty under orders.

■ ■ The court will first discuss whether the petitioner has a clear right to the relief sought, and whether there is a clear duty on the part of respondents to grant it. Generally speaking, the Army must follow its own rules and regulations, Hammond v. Lenfest, 398 F.2d 705, 710 (2d Cir. 1968), and, when it does not, a mandamus action may be appropriate. Smith v. Resor, 406 F.2d 141 (2d Cir. 1969). Nevertheless, the decision of the Supreme Court in Orloff v. Willoughby, 345 U.S. 83, 93, 94, 73 S.Ct. 534, 97 L.Ed. 842 (1953), that the day-to-day operations of the armed forces are best left to the military is still the general rule.[4]

■ Petitioner first argues that the order of March 9, 1971 discharged him from military service and made him a civilian. He reasons that, because the stay was dissolved without notice to him, the subsequent act of the Army to "release him from custody and control" was a voluntary act of the Army, not brought about by the court order, and was therefore a discharge. This argument fails to take into account that the message of February 23, 1971 authorizing the subsequent order referred specifically to the court order granting the writ of habeas corpus. Further, the purpose of paragraph 5–12, Army Regulations 635–200, is to assure that court orders discharging or releasing military personnel are carried out promptly in accordance with a definite procedure. Paragraph 5–12 directs the Adjutant General, when he has been informed of the discharge or release of an individual from the Army by court order, to "take appropriate action to direct the discharge, release from active military service, or release from military control of the individual concerned." Although there does not appear to be any statutory authority for paragraph 5–12 and its scheme of release from custody and control, the action taken was not unfair to the petitioner and would appear to be an appropriate step on the part of the military to carry out properly orders of courts. The release procedure gave the petitioner a prompt release from military control, which is what he petitioned for. On the other hand, to require him to serve under the direction of a stay while an appeal is processed may be unfair where the final result is an affirmance of the district court decision.

Unquestionably, there are numerous cases in which servicemen have been returned to duty after lower court orders releasing them have been reversed. However, as a practical matter, most servicemen evidently return to duty without litigation, for our research has found few cases in which there has been litigation about the effect of the reversal of a habeas corpus release. The Army admits that no statute or administrative regulation sets forth procedures for a return to custody. Nevertheless, it appears that, whether the order of release is looked upon as a discharge or merely a release from the custody of the Army, under the decision of the Supreme Court in Eagles v. United States ex rel. Samuels, 329 U.S. 304, 67 S.Ct. 313, 91 L.Ed. 308 (1946), the Army has the authority

---

4. Neither side claims that the petitioner has administrative remedies available to him which he has failed to exhaust. ■■■■

*See* Sumpter v. Laird, 4–70 Civ. 143 (D. Minn.1970).

to order Lovallo to return to custody. Samuels was a soldier who initiated a habeas corpus proceeding in the United States District Court. The Court of Appeals reversed the district court's dismissal of the petition. Thereafter, Samuels was unconditionally released by the military. Samuels contended in the Supreme Court that his case was moot since he was no longer in custody. The Supreme Court held, however, that the case was not moot, reversed the Circuit Court, and held that Samuels was not entitled to the writ. In doing so, the Court noted that Samuels' release had been obtained through the assertion of judicial power over the Army and observed that

> [i]t is the propriety of the exercise of that power which is in issue in the appellate court, whether the prisoner is discharged or remanded to custody. Though the writ has been granted and the prisoner released, the appellate court by what it does is not rendering an opinion and issuing an order which cannot affect the litigants in the case before it. . . . Affirmance makes the prisoner's release final and unconditional. Reversal undoes what the habeas corpus court did and makes lawful a resumption of the custody.

329 U.S. at 307–308, 67 S.Ct. at 315. Therefore, reversal of Judge Weinstein's order in petitioner's case makes lawful a resumption of the custody.[5]

Petitioner's alternative argument is that, even if the Army is entitled to regain custody, he must be given active duty credit for the nine-month period from March 9 until December 9, 1971, when his enlistment contract expired. This argument is based partly upon the theory that there is no authority for the order of "the release from custody and control." Therefore, he claims that from March to December he was still in service and cannot be required to make up lost time unless required to do so by statutory authority. Petitioner refers to Title 10, United States Code, Section 972, which sets forth the various circumstances under which an enlisted man may be required to make up lost time.[6] None of the conditions set forth in the section apply to this case, but each refers to a circumstance in which the serviceman made himself unavailable for duty by disregard or disobedience of Army regulations. The section does not attempt to deal with the effect of a release pursuant to a court order. If "[r]eversal undoes what the habeas corpus court did and makes lawful a resumption of custody," Eagles v. United States ex rel. Samuels, *supra,* 329 U.S. at 308, 67 S.Ct. at 316, it must mean that, when the serviceman returns to duty, his obligation to serve must be computed from the time he left.

However, it is evident—and admitted by the Army—that no statute or administrative regulation details when and how

---

5. There might be validity to petitioner's argument if the district court had denied the writ and then the Army, on its own, discharged the petitioner. *See* Zimmerman v. Walker, 319 U.S. 744, 63 S.Ct. 1027, 87 L.Ed. 1700 (1943).

6. Title 10, United States Code, Section 972 provides:
   An enlisted member of an armed force who—
   (1) deserts;
   (2) is absent from his organization, station, or duty for more than one day without proper authority, as determined by competent authority;
   (3) is confined for more than one day while awaiting trial and disposition of

his case, and whose conviction has become final;
   (4) is confined for more than one day under a sentence that has become final; or
   (5) is unable for more than one day, as determined by competent authority, to perform his duties because of intemperate use of drugs or alcoholic liquor, or because of disease or injury resulting from his misconduct;
is liable, after his return to full duty, to serve for a period that, when added to the period that he served before his absence from duty, amounts to the term for which he was enlisted or inducted.

custody is to be restored and for what period of time Lovallo must serve. In spite of the myriad regulations which the Secretary of the Army has promulgated under Title 10, United States Code, Section 3012(g), it would be impossible for him to cover every eventuality. Under Section 3012, the Secretary of the Army is given broad powers to carry out his responsibilities. The fact that he has not promulgated a regulation applicable to the determination to be made in this case should not detract from his power to decide that Lovallo should not be credited with nine months of service and be returned to duty to complete that period. Further, Congress has also provided by Title 10, United States Code, Section 1169, that

> No regular enlisted member of an armed force may be discharged before his term of service expires, except—
>
> (1) as prescribed by the Secretary concerned;
>
> (2) by sentence of a general or special court martial; or
>
> (3) as otherwise provided by law.

■ It is not unreasonable for the Secretary to decide that "term of service" does not include time spent while free of the custody of the Army.[7]

It therefore follows that petitioner has failed to show that he has a clear right to the relief sought, or that there is a clear duty on the part of respondents to give relief to petitioner.

The motion of the respondents is granted in all respects and the petition is dismissed. The Clerk shall stay entry of the judgment until June 26, 1972. No further stay will be granted by this court.

So ordered.

---

7. The petitioner complains about the length of time the Army waited before recalling him. After the Court of Appeals rendered its decision on May 24, 1971, no communication was sent to Lovallo until December 16, 1971 when he received orders. After the ninety-day period for filing the application for a writ of certiorari expired, the additional delay was caused by the necessity for the meetings and the preparation of orders.

It should be noted that Lovallo made no inquiry of the Army concerning their plan for his return. Under the circumstances, this court cannot say that there was an abuse of discretion. In addition, counsel for the Army has informed the court that serious consideration is currently being given to the preparation of regulations to take care of the problems presented in this case.