**Lee T. LOVALLO, Petitioner-Appellant,**

v.

**Robert F. FROEHLKE, Secretary of the Army and Major General John Hightower, Commanding General of Fort Hamilton Complex, Respondents-Appellees.**

No. 927, Docket 72–1732.

United States Court of Appeals, Second Circuit.

Argued Aug. 18, 1972.

Decided Oct. 3, 1972.

Leonard C. Lovallo, Buffalo, N. Y. (Charles J. Fiorella, Buffalo, on the brief), for petitioner-appellant.

Royce C. Lamberth, Judge Advocate, Washington, D. C. (C. Donald O'Connor, Acting U. S. Atty., Philip B. Abramowitz, Asst. U. S. Atty., on the brief), for respondents-appellees.

Before MANSFIELD and TIMBERS, Circuit Judges, and GURFEIN, District Judge.*

GURFEIN, District Judge.

This is a strange case in which both parties have failed to look to our docket, and in consequence have briefed the matter both here and below on an assumption that is directly contrary to the fact of record. To understand this mutual error and its application to the appeal a brief recital of the facts will be in order.

Appellant, Lee T. Lovallo, was ordered to be recalled to active duty by the Army. He brought a petition for mandamus against the Secretary of the Army to enjoin the order upon the ground that his enlistment has expired and that the appellee's order is without authority in law. On cross motions for summary judgment, Judge Curtin of the Western District granted summary judgment dismissing the petition, 346 F.Supp. 1037. This appeal was taken from that order.

Appellant enlisted in the Regular Army on December 10, 1968 on a contract for a three year enlistment with an initial assignment option for the 26th Army Band at Fort Wadsworth, New York, after which he was to be available for reserve duty for another three years.[1] Lee Lovallo first came to the attention of this Court in Cortright v. Resor, 447 F.2d 245, 248 n. 2 (2 Cir. 1971), cert. denied, 405 U.S. 965, 92 S.Ct. 1172, 31 L.Ed.2d 240, as a member of the 26th Army Band, Fort Wadsworth, New York. That Band engaged in a peace demonstration on July 4, 1970, as a consequence of which some of its members were transferred to other bands. Cortright was transferred to another safe berth in the United States, 447 F.2d at 253, n. 10. Lovallo was scheduled for assignment to Korea by notice dated August 5, 1970. On September 18, 1970 he filed an application for discharge as a conscientious objector. When the Army's Conscientious Objector Review Board denied his discharge Lovallo brought a petition for a writ of habeas corpus in the District Court for the Eastern District of New York. The Court (Weinstein, J.) granted the writ and ordered the petitioner discharged. The District Court granted a stay, however, pending application for a stay in this Court. On motion of the Government made on February 5, 1971 this Court granted a stay pending appeal, and further ordered "that appellee is to

---

* Of the United States District Court for the Southern District of New York, sitting by designation.

1. Under the provisions of Section 651 of Title 10 U.S.Code, appellant has a six year statutory obligation and any period of this six years not on active duty must be in a reserve component.

remain on leave status." Appellee was also ordered to file his brief before March 8, 1971 and the argument was set for the latter part of that week.

When the Judge Advocate General's office heard that the United States Attorney for the Eastern District of New York had applied for and obtained a stay, it notified him that this was contrary to Army policy, primarily because it involved an early briefing schedule and argument and did not allow enough time for the Solicitor General to consider the merit of an appeal. It, therefore, requested the United States Attorney to move to vacate the stay which he had himself obtained from this Court. The United States Attorney, in accordance with these instructions, moved on February 26, 1971 to vacate the stay and to extend the time for filing the Government's brief.[2]

Both sides, in their presentation before Judge Curtin below and in their briefs and argument here, have assumed that the Government's motion to vacate the stay was thereupon *granted* by this Court. Judge Curtin, on the basis of what the parties presented, found that "[u]pon application of the government, without notice to the petitioner, the stay was vacated by the Court of Appeals on or about February 12, 1971."[3]

On this appeal, appellant's brief states: "Thereafter, the Army moved to dissolve the stay and on March 1, Lovallo submitted an affidavit in opposition to that stay [sic]. The Court of Appeals dissolved that stay on or about March 5, 1971." The Government's brief on this appeal recites that "upon application of the Government the stay

was vacated by this Court shortly after 12 February 1971."

The vagueness of the language used by both parties with respect to a decision of this Court allegedly made "on or about March 5, 1971" and "shortly after 12 February 1971" intrigued us. We, accordingly, reviewed the docket and file in this Court and learned the following.

The Government's motion of February 26 to vacate the stay and to extend its time to file a brief came before Judge Hays. He granted the extension of time, but he referred the motion to vacate the stay to the original panel which had granted the stay. The motion, it appears, was on notice, and Lovallo filed an affidavit by his attorney dated March 1, 1971 objecting to "an extension" of the stay (which he apparently thought the Government was seeking).[4] The reason given for opposing delay, presumably of the argument of the appeal, was that it was unfair in that "he must disclose to any prospective employer the fact that he is still technically a member of the military and might be called upon to return to active duty at any moment." The original panel of this Court thereafter, on March 23, 1971, *denied* the Government's motion of February 26, 1971 to vacate the stay. The Court, on May 24, 1971, ultimately reversed the District Court, Lovallo v. Resor, 443 F.2d 1262 (2 Cir. 1971), and simply ordered the petition dismissed on the ground that there was a "basis in fact" for a determination of insincerity. No further order was given to the Army with respect to Lovallo's status.

On February 23, 1971, the Army, erroneously assuming that the stay would

2. Although the United States Attorney's office was apparently not informed, the Army had previously ordered Lovallo's separation from active duty on February 23, 1971.

3. In the District Court Lovallo, in his brief, had stated: "On its own volition, without notice to the petitioner, the stay was dissolved by the Army on February 11, 1971." The affidavit of the Judge Advocate General officer which was submitted to Judge Curtin recited: "It is my under-

standing that Mr. Baker [the Assistant United States Attorney in the Eastern District] moved to dissolve the stay in the Court of Appeals, and that some time shortly after 12 February 1971 the stay was dissolved."

4. The affidavit recited: "The respondents [sic], having found an Army regulation which permits them to separate the petitioner and hold him in administrative limbo until the matter is finally adjudicated, now move to extend [sic] the stay."

be vacated at its request, jumped the gun and ordered Lovallo "released from the custody and control of the Army" without granting him a discharge. He was actually released on March 9, 1971.[5] This was contrary to the outstanding order of this Court that he was to "remain on leave status." The Army relied for its action on Army Regulation 635–200, paragraph 5–12 "and the order of the U. S. District Court for the Eastern District." The relevant portion of the Army Regulation provides:

"5–12. *Lack of jurisdiction.* The discharge or release of an individual from the Army may be ordered by a U. S. Court or judge thereof. The officer upon whom such an order or writ is served will report immediately to the Judge Advocate General . . . who will take appropriate action to direct the discharge, release from active service, or release from military control of the individual concerned."

Lovallo thus found himself out of the Army, "released from military control," though without being released from active military service or discharged to reserve status. He knew that he had lost the appeal by May 24, 1971 but he took no step to find out what his status was. Nor did he file a petition for a writ of certiorari in the Supreme Court. He simply waited for orders. The Army, for its part, allowed time to march on. It did nothing overt until December 9, 1971, more than six months after it had won the appeal and more than three months after the time to apply for a writ of certiorari had expired. The Army then issued a special order (S.O. 250) on December 10, 1971, directing Lovallo to report to Fort Dix on December 17, 1971, and providing that "in computing [petitioner's] period of service the period from 9 March 1971 to 16 December 1971 will be excluded."

If Lovallo's three year enlistment is computed on a calendar basis his three year term expired December 9, 1971— the day before the order was issued. He contends that he can, therefore, no longer be called to active duty. The Army contends that Lovallo's contract of enlistment was for a period of three years and that, having served only two years and three months up to March 9, 1971, he still owes the Army nine months of service.

The question before us, in this comedy of errors, is whether Judge Curtin (though relying on "facts" which were contrary to fact) properly dismissed the petition for mandamus. The subsidiary questions are: Who separated Lovallo from the Army, the courts or the Army itself; and can he now be brought back to serve on active duty in an Army Band?

I

■ Generally speaking before the writ of mandamus may properly issue three elements must co-exist: (1) a clear right in the plaintiff to the relief sought; (2) a plainly defined and peremptory duty on the part of the defendant to do the act in question; and (3) no other adequate remedy available. United States ex rel. Girard Trust Co. v. Helvering, 301 U.S. 540, 543–544, 57 S. Ct. 855, 81 L.Ed. 1272 (1937); 28 U.S. C. § 1361.

■ The first argument made by the Army is that appellant has sought the wrong remedy because the remedy of habeas corpus is available. It asserts that he should have reported to the Army at Fort Dix and then brought a petition for a writ of habeas corpus in New Jersey. We do not see the necessity for that involved method in a case like this. The appellant's challenge is, in essence, to "compel an officer or employee of the United States or any agency thereof to

---

5. The Judge Advocate General's office was surprised to find that Lovallo had been placed on leave by his commanding officer but apparently did not inquire whether it was pursuant to a mandate of this Court. In any event, Lovallo's leave was then cancelled so that he might be separated from the custody and control of the Army.

perform a duty owed to the plaintiff" 28 U.S.C. § 1361. He maintains that the Army's order is without color of authority. He maintains that no discretion is involved since his term of enlistment has allegedly been terminated, either by its normal expiration or by the unilateral action of the Army in separating him under circumstances which do not, as a matter of law, permit it to order his return to active duty. There may be some question, moreover, whether habeas corpus would lie to enforce a change of status from active duty to reserve rather than to civilian status. *Cf.* Orloff v. Willoughby, 345 U.S. 83, 93, 73 S.Ct. 534, 97 L.Ed. 842 (1953) but *cf.* Hammond v. Lenfest, 398 F.2d 705, 710–712 (2 Cir. 1968). And see United States ex rel. Schonbrun v. Commanding Officer, 403 F.2d 371 (2 Cir. 1968), cert. denied, 394 U.S. 929, 89 S.Ct. 1195, 22 L.Ed.2d 460 (1969).

■■ This Court considered an analogous question in Schonbrun v. Commanding Officer, *supra*. There a soldier who had voluntarily enlisted in the Reserve, challenged an order requiring him to report for active duty. The Court held that "[w]hether or not habeas corpus is available, the district court was free to treat the petition as one for mandamus under 28 U.S.C. § 1361" 403 F.2d at 374. See also Smith v. Resor, 406 F.2d 141 (2 Cir. 1969); Nixon v. Secretary of Navy, 422 F.2d 934 (2 Cir. 1970). Although in *Schonbrun* jurisdiction was declined because the Court did not wish to undertake "civilian review of discretionary action by the military" in so-called "hardship cases," here the mandate of this Court itself is in-

volved. We can hardly adopt a rule of abstention in such case. Since we may properly examine whether the Army has followed its own regulations, Smith v. Resor, *supra*, at 146 (2 Cir. 1969), United States ex rel. Mankiewicz v. Ray, 399 F.2d 900 (2 Cir. 1968), we certainly can determine the effect of our own mandate.

Judge Curtin, on the basis of the misinformation supplied to him in the record below, held that the petitioner had not established a clear right to the relief sought or a clear duty on the part of respondent to do the act in question. He, accordingly, granted the motion to dismiss the petition.[6]

## II

■ The Army supports its order for Lovallo to return to active duty upon the ground that the reversal by this Court of the habeas corpus relief granted by Judge Weinstein restored him to the Army. "Reversal undoes what the habeas corpus court did and makes lawful a resumption of custody." Eagles v. United States ex rel. Samuels, 329 U.S. 304, 308, 67 S.Ct. 313, 316, 91 L.Ed. 308 (1946). We think the statement in *Eagles* is applicable here.[7] When Lovallo was separated from the custody and control of the Army it was because of Judge Weinstein's order and only because of it. If there had been no District Court order granting the writ of habeas corpus, the Army would not have dreamed of separating Lovallo from active duty. His "release [was] obtained through the assertion of judicial power" (329 U.S. at 307, 67 S.Ct. at 315). It would be highly technical to hold otherwise. The ac-

---

6. In reviewing a denial of a petition for mandamus, it is sometimes helpful to consider the merits before determining whether the jurisdictional requirements for mandamus have been met. See Carter v. Seamans, 411 F.2d 767, 770 n. 4 (5 Cir. 1969), cert. denied, 397 U.S. 941, 90 S.Ct. 953, 25 L.Ed.2d 121 (1970); West Coast Exploration Co. v. McKay, 93 U.S. App.D.C. 307, 213 F.2d 582, 592–594, cert. denied, 347 U.S. 989, 74 S.Ct. 850, 98 L.Ed. 1123 (1954).

7. The precise issue raised in *Eagles* was whether the case had become moot, but the language of the Supreme Court is more than dictum as applied to this appeal, for it follows logically that if "reversal undoes what the habeas corpus court did" the effect of the reversal is to restore the status of appellant as a soldier at the time of the erroneous order.

tion of the Army in following Judge Weinstein's order is not fatal to its power to get Lovallo back upon a reversal of that order.

When this Court ordered the appellant to be placed on leave status it did no more than say that he was to be freed of active duty for the time being so that if there should be an affirmance he would not have unlawfully served while the appeal was pending. The situation is quite analogous to release of a prisoner pending appeal from the granting of a writ of habeas corpus.

The reason for permitting release of the prisoner when the writ is granted in the court of first instance was stated by Judge Cardozo in these words: "It would be intolerable that a custodian adjudged to be at fault, placed by the judgment of the court in the position of a wrongdoer, should automatically, by a mere notice of appeal, prolong the term of imprisonment, and frustrate the operation of the historic writ of liberty." People ex rel. Sabatino v. Jennings, 246 N.Y. 258, 260, 158 N.E. 613, 614 (1927).

█ The Army should be encouraged to honor a writ of habeas corpus by setting a soldier at large pending the appeal just as a prisoner may be enlarged pending the appeal. The Army deserves no penalty for being fair even though its prime motive may have been its own convenience.

When this Court ordered the appellant to be placed on leave status it did implicitly what it could have done explicitly. We see no difference between the condition of the stay in this case and the final determination of the Court of Appeals for the First Circuit in Benitex-Manrique v. Micheli, 439 F.2d 1173 (1 Cir. 1971). There the opinion vacating the granting of the writ and ordering dismissal of the complaint specifically said: "Because the court's order had the effect of suspending petitioner's service, the Army may adopt any appropriate procedure that will exclude from his term of duty the period between the or-

der and the dismissal of the complaint" 439 F.2d at 1176. Our reversal meant no less. The reference in that case to "any appropriate procedure" assumed that no formal regulation is required to legitimatize the obvious. So here to permit appellant to escape performing his active duty would be to nullify the decision of this Court in its judgment of reversal. Whether in the interim he was "on leave" or "separated" is of no moment. In either case he was on a short tether. His post was the Army until affirmance.

### III

█ There is a further question, however. The calendar three years of appellant's contract had terminated before the special order for him to return to active duty was issued. We hold that his term of enlistment was for a period of three years which did not end on the calendar date three years from the date of enlistment.

The oath of enlistment which appellant took reads: "I, Lee Theodore Lovallo, do hereby acknowledge to have voluntarily enlisted under the conditions prescribed by law this 10th day of December, 1968, in the United States Army for a period of three (3) years unless sooner discharged by proper authority." That the three years was a period of time was also indicated by the enlistee's affirmation, "I further understand that if I am credited with three years active duty, I will not be involuntarily assigned to a reserve unit nor will I be required to participate in unit training."

The applicable statute, 10 U.S.C. § 101(22) defines "active duty" as "full-time duty in the active military service of the United States. . ." There can be little doubt that Lovallo has not performed "full-time duty in the active military service of the United States . . ." for a period of three years.

### IV

There remains for consideration, nevertheless, the effect of the Army's pro-

crastination in making up its collective mind on what to do about Lovallo. Surely if five or ten years after the reversal by this Court, the Adjutant had come to Lovallo's door with orders to report for active duty the soldier might property resent the dislocation of his life and, indeed, the imposition of active duty on his by then aging body. We cite the extreme because it helps us to focus on the problem.

 Here the Army dawdled but the appellant also kept his peace. The Army was sensible in taking no further step to order appellant back to active service until his ninety days for petitioning for certiorari had expired. That date was August 23. The delay of slightly over three months from that date to December 10 is understandable in view of the lack of clear procedural regulation to cover the situation.[8] The issue is simply, then, whether delaying the issuance of Army orders for three months, however regrettable, is an abuse of discretion so gross, see Nixon v. Secretary of the Navy, *supra,* 422 F.2d 934, at 939, as to support a writ of mandamus against the Secretary of the Army. We think not. The Army had the right to have the appellant return to active duty. The delay, in these circumstances, does not justify us in interfering with the day by day operations of the armed forces. Orloff v. Willoughby, *supra.*

It would be desirable if a regulation were issued which would assure uniform treatment and we hope such a regulation will be formulated. Since there is no applicable regulation and since so much time has now elapsed, we condition our affirmance, however, on the Army's extending the time for appellant to report for duty not earlier than thirty days from the mandate to give him a chance to arrange his affairs.

Affirmed.

---

8. There is no Army regulation supplementing Regulation 635-200 paragraph 5-12 cited above which prescribes the procedure for the recall of a soldier who was granted a writ of habeas corpus which was later reversed on appeal.