**Wilbert Eugene PROFFITT**

v.

**UNITED STATES of America, et al.**

**Civ. A. No. 89–00725–R.**

United States District Court,
E.D. Virginia,
Richmond Division.

July 10, 1990.

Wilbert Eugene Proffitt, Terre Haute, Ind., pro se.

Robert W. Jaspen, Asst. U.S. Atty. for U.S.

## MEMORANDUM

SPENCER, District Judge.

Plaintiff Wilbert Eugene Proffitt, an inmate housed at the Federal Correctional Institute in Lewisburg, Pennsylvania, brings this suit pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Plaintiff seeks monetary and injunctive relief, a temporary restraining order, and a writ of mandamus pursuant to 28 U.S.C. § 1361. Plaintiff has two other motions pending: one regarding discovery; and a second requesting a preliminary ruling in order to narrow issues. The defendants in the action are the United States of America, Harvey Tarleton, a disciplinary hearing officer at the Federal Correctional Institute, Petersburg, Virginia, and Kevin Parker, plaintiff's case manager while he was incarcerated at the Federal Correctional Institute in Petersburg, Virginia. The individual defendants are sued in their individual and official capacities. The United States moves to dismiss, and both individual defendants move the Court to dismiss them in their official capacities. The two individual defendants also move the Court for summary judgment in their individual capacities. Plaintiff has responded. Jurisdiction is appropriate pursuant to 28 U.S.C. §§ 1331 and 1361.

Plaintiff alleges four causes of action. His causes of action may be fairly summarized as follows:

1. Plaintiff contends that the defendants have violated the Sherman Amendment: "... Any person or persons having knowledge that any wrong conspired to be done, having power to prevent or aid in preventing the same, and shall neglect to refuse to prevent the wrong, shall be liable to the injured party or his legal representative." Plaintiff alleges "that the defendants, their cohorts, agents, and parties too numerous to name in this complaint, have acted in the manner, based upon the said facts, to cover; hide; fabricate; make-up; and directly, with full knowledge and intent, attempt to place this plaintiff in the position of danger and harm, and penalize said plaintiff for any attempt to bring this matter to the attention of the proper authorities—hiding by 'sham' internal in-

vestigations the facts to cover of known incidents that shed light on what has happened in this system in the past and what this system should attempt as a matter of routine, acting under 'color of law.' "

2. Defendants have interfered with plaintiff's access to the courts, to-wit: by placing him in custody to prevent him from filing actions; by limiting his mail; by restricting his access to legal materials; by stealing his legal materials; by restricting his visitation; by hiding direct evidence of their misdoings; by fabricating incidents of misconduct (no regulation requires an inmate to enter the general prison population); and "then falsely notifying the Parole Commission ... in a planned and coordinated method of conduct designed and perpetrated upon plaintiff to falsely imprison plaintiff without due process of law or any form of effective legal representation or assistance of counsel."

3. The disciplinary procedures of the defendants are unconstitutional. From the initial filing of the incident report, review is singular, the decisions of the United States Supreme Court call for a "neutral committee," and never envisioned this singular form of review. Although referred to as a committee, it consists but of a single person. Each review thereafter "if indeed there is a review" consists of a single person review, called an appeal. No constitutional basis exists for the present policy and practice of disciplinary proceedings as practiced in the federal prison system. The check and balance principles, either in a judicial or administrative setting, affecting life and liberty, forbid a practice of this nature in which further incarceration can be grounded or extended.

4. The procedures followed by the defendants are designed to incarcerate plaintiff in violation of his fifth and sixth amendment rights. *See Green v. McCall*, 822 F.2d 284 (2d Cir.1987) (binding on the Parole Commission and the procedures thereof in reference to recision hearings).

 Claim 1 appears to be based on a statute passed originally in 1871. The Act read as follows:

That any person or persons, having knowledge that any of the wrongs conspired to be done and mentioned in the second section of the Act are about to be committed, and having power to prevent or aid in preventing the same, shall neglect or refuse so to do, and such wrongful act shall be committed, such person or persons shall be liable to the person injured, or his legal representatives, for all damages caused by any such wrongful act which such first-named person or persons by reasonable diligence could have prevented; and such damages may be recovered in an action on a case in the proper circuit court of the United States, and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in such action: *Provided*, That such action shall be commenced within one year after such cause of action shall have accrued; and at the death of any person shall be caused by any such wrongful act and neglect, the legal representatives of such deceased person shall have such action therefor, and may recover not exceeding $5,000.00 therein, for the benefit of the widow of such deceased person, if any there be, or if there be no widow, for the benefit of the next of kin of such deceased person.

*See* Public Law No. 42–10, 17 Stat. 15 (Apr. 20, 1871) (codified as amended in 42 U.S.C. § 1986). The statute was part of the original Civil Rights Act of 1871. The current version of the above quoted statute reads as follows:

Every person who, having knowledge of any of the wrongs conspired to be done, and mentioned in § 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the

case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action; and if the death of any party be caused by any such wrongful act in neglect, the legal representatives of the deceased shall have such action therefor, and may recover not exceeding $5,000.00 damages therein, for the benefit of the widow of the deceased, if there be one, and if there be no widow, then for the benefit of the next of kin of the deceased. But no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued.

42 U.S.C. § 1986.[1] Before plaintiff can recover under § 1986, he must establish a violation of 42 U.S.C. § 1985. *See Dowsey v. Wilkins,* 467 F.2d 1022, 1026 (5th Cir. 1972).

The United States has not consented to suit under the Civil Rights statutes. *See Unimex, Inc. v. United States Dept. of Housing,* 594 F.2d 1060, 1061 (5th Cir.1979) (citations omitted). "The mere fact that federal legislation protects these rights does not imply that the United States has waived its immunity." *Unimex, Inc.,* 594 F.2d at 1061 (citing *United States v. Testan,* 424 U.S. 392, 400–01, 96 S.Ct. 948, 954–55, 47 L.Ed.2d 114 (1976)). Moreover, the United States is not a person within the meaning of § 1985. *See Flesch v. Eastern Pennsylvania Psychiatric Institute,* 434 F.Supp. 963 (E.D.Pa.1977) (a person within the meaning of § 1985 is subject to the same analysis used to interpret person within the meaning of § 1983). Nor can plaintiff recover monetary damages against the individual defendants sued in their official capacity. *Unimex, Inc.,* 594 F.2d at 1061–62. The United States and the individual defendants, Tarleton and Parker, to the extent they are sued in their official capacity for monetary damages, will be dismissed with regard to claim 1.

It is impossible to determine on the basis of the current claim whether or not the individual defendants are or are not liable.

In addition, it is apparent from the plain language of the claim that plaintiff asserts that other individuals were involved in the alleged conspiracy. Plaintiff will, therefore, be granted twenty (20) days within which to amend claim 1 as follows:

1. Plaintiff shall set out his § 1985 claim stating which subparagraph he is proceeding under, § 1985(1), § 1985(2), or § 1985(3). Plaintiff is cautioned that a § 1985 claim must be pleaded with specificity in order to withstand a motion to dismiss. *See Martin v. Delaware Law School of Widener University,* 625 F.Supp. 1288, 1297, (D.Del.1985) (citing *Fletcher v. Hook,* 446 F.2d 14, 16 (3d Cir.1971); *Negrich v. Hohn,* 379 F.2d 213 (3d Cir.1967); and *Ross v. Meagan,* 638 F.2d 646, 650 (3d Cir.1981)). Broad, conclusory allegations, unsupported by specific facts implicating specific defendants are insufficient to state a claim upon which relief can be granted. *See Martin,* 625 F.Supp. at 1297 (citations omitted).

2. Plaintiff will name each and every defendant he seeks to hold liable under § 1986, whether named in the present complaint or not, that participated in the conspiracy alleged in claim 1.

3. Plaintiff will set out, with regard to each and every defendant named pursuant to paragraph 2 above, each and every act of each defendant which he alleges forms a basis for liability on each and every defendant's part.

4. Plaintiff will set out the dates of the alleged incidences described in paragraph 3 above, and the date that the named defendants had knowledge and failed to act.

Failure to amend claim 1 as described above within the twenty (20) days allotted by the Court, will result in dismissal of claim 1.

■ Plaintiff's second claim alleges a variety of actions on the part of the defendants to prohibit his access to the courts.

---

1. The matters covered by § 1985 which form the basis for a cause of action under § 1986, include preventing an officer from performing his duties, obstructing justice, intimidating a party witness or juror; and depriving a person of rights or privileges. *See* 42 U.S.C. § 1985.

Plaintiff has not demonstrated how any legal action, maintained or being contemplated, has suffered from the alleged denial of access to the courts. Claim 2 will be DISMISSED. *See Magee v. Waters*, 810 F.2d 451, 452–53 (4th Cir.1987) (where plaintiff has not indicated any actual or specific harm that has resulted in limited access to the institution's law library, no constitutional deprivation has occurred within the meaning of *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977)).

■ Claim 3 appears to be a challenge to the constitutionality of the disciplinary procedures used at FCI Petersburg. Plaintiff's specific objection to the disciplinary procedures employed at FCI Petersburg are that from the instant report through the disciplinary hearing itself and all subsequent levels of appeal and review, the decision-making entity is but a single person, and not a neutral committee as envisioned by the Supreme Court. The only due process requirements prescribed by the United States Constitution in connection with a prison disciplinary hearing were set out by the United States Supreme Court in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). The requirements are: (1) advanced written notice of the charges must be given to the inmate at least twenty-four (24) hours prior to his appearance before the Adjustment Committee; (2) there must be a written statement by the fact finders as to the evidence relied upon and the reasons for the disciplinary action taken; (3) the inmate should be allowed to present documentary evidence and to call witnesses, as long as allowing him to do so will not jeopardize institutional safety; (4) the inmate should be allowed the assistance of a fellow inmate or staff member (but he has no right to retained or appointed counsel); and (5) an impartial decision-making body. *Wolff*, 418 U.S. at 563–71, 94 S.Ct. at 2978–82.

Although *Wolff v. McDonnell* refers to a "committee," the thrust of the Supreme Court's concern was that the decision-making authority be impartial, not arbitrary and capricious. *Id.* at 570–71, 94 S.Ct. at 2981–82. The Bureau of Prisons provides for an impartial decision-making entity:

The Warden shall delegate to one or more institution staff members the authority and duty to hold an initial hearing upon completion of the investigation. In order to insure impartiality, the appropriate staff member(s) (hereinafter usually referred to as the Unit Discipline Committee (UDC)) may not be the reporting or investigating officer or a witness to the incident, or play any significant part in having the charges referred to UDC. However, a staff member witnessing an incident may serve on UDC where virtually every staff member in the institution witnesses the incident in whole or in part.

28 C.F.R. § 541.15. In reaching its decision the UDC "shall consider all evidence presented at the hearing and shall make a decision based on at least some facts, and if there is conflicting evidence, it must be based on the greater weight of the evidence." 28 C.F.R. § 541.15(f).[2] The UDC shall then find one of three things: that the inmate did not commit the prohibited act charged or a similar prohibited act; that the inmate did commit the prohibited act or a similar prohibited act; or may refer the case to a discipline hearing officer for hearing and disposition. 28 C.F.R. §§ 541.15(f) and 541.15(h). The Bureau's regulations also provide for the impartiality of the Discipline Hearing Officer (DHO):

(a) Each Bureau of Prison institution shall have an independent hearing officer (DHO) assigned to conduct administrative fact-finding hearings covering alleged acts of misconduct and violations of prohibited acts, including those acts which could result in criminal charges.

---

**2.** This is a higher standard than that which the United States Supreme Court has held satisfies the requirements of due process. *See Superintendent v. Hill*, 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985) (decision by prison disciplinary board to revoke good time credits satisfies due process concerns, if there is any evidence to support it). The Supreme Court specifically rejected a more stringent evidentiary standard as a constitutional requirement. *Id.* at 456, 105 S.Ct. at 2774–75.

In the event of a serious disturbance or other emergency, [or] if an inmate commits an offense in the presence of the DHO, an alternate discipline hearing officer will be appointed to conduct hearings with approval of the appropriate regional director. If the institution's DHO is not able to conduct hearings, the warden shall arrange for another DHO to conduct the hearings. This person must be trained and certified as a DHO, and meet the other requirements for DHO.

(b) In order to insure impartiality, the DHO may not be the reporting officer, investigating officer, or UDC member, or a witness to the incident or play any significant part in having the charge(s) referred to the DHO.

28 C.F.R. § 541.16(a)–(b). The DHO is required to consider all the evidence presented at the hearing.

> The decision of the DHO shall be based on at least some facts, and if there is conflicting evidence, it must be based on the greater weight of the evidence.

28 C.F.R. § 541.17(f).[3] The Bureau of Prison regulations provide for three different levels of appeal: the warden, regional director, and general counsel. 28 C.F.R. § 542.10–16.

Defendant Tarleton is the only defendant that appears to have anything to do with the disciplinary hearing process. His affidavit in support of his motion for summary judgment indicates that he is a disciplinary hearing officer at FCI, Petersburg, and that on April 13, 1989, he found plaintiff had committed a prohibited act of attempting to destroy government property with a value of less than $100.00.[4] Plaintiff has not shown that defendant Tarleton was partial in performing his duties as a DHO with regard to the charge described above. Plaintiff's challenge to the constitutionality of the regulations is premised solely upon his contention that the use of the word committee by the Supreme Court in *Wolff* requires that the decision-making entity be more than just a single person. Plaintiff's assertion is conclusory, claim 3 is without merit, and it will be DISMISSED.

■ Claim 4 alleges improprieties in petitioner's parole recision proceedings. In addition, petitioner also asserts that the defendants have used parole recision proceedings as a means of extending his incarceration and denying him due process he would be afforded in a normal criminal proceeding. Specifically, petitioner alleges that through the machinations of the defendants, he has been denied the assistance of counsel. A challenge to the manner in which a federal prisoner's parole recision hearing was conducted, is properly sought in a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, and "addressed to the district court with jurisdiction over the prisoner or his keeper." *See Smith v. United States*, 618 F.2d 507, 510 (8th Cir.1980) (citations omitted). The allegations asserted in claim 4, therefore, must be brought in a separate petition pursuant to 28 U.S.C. § 2241. Claim 4 will be DISMISSED WITHOUT PREJUDICE.

## TEMPORARY RESTRAINING ORDER

■ The Fourth Circuit has adopted the "balance of hardship" test. *See South Carolina Dept. of Wildlife & Marine Sources v. Marsh*, 866 F.2d 97, 99 (4th Cir.1989). Under the balance of hardship test, the district court must consider:

> (1) the likelihood of irreparable harm to a plaintiff without an injunction, (2) the likelihood of harm to the defendant with an injunction, (3) the plaintiff's likelihood of success on the merits, and (4) the public interest.

---

**3.** The regulations provide further protections for the integrity of the proceedings, because if a disciplinary decision is based on information provided by a confidential informant:

> The UDC or DHO shall document, accordingly in the hearing report, the finding as to the reliability of each confidential informant relied on *and the factual basis for that finding.* 28 C.F.R. § 541.17(f).

**4.** The supporting documents, together with the affidavit, indicate that plaintiff was originally charged with the prohibited act of setting a fire. Based on the evidence presented, defendant Tarleton did not feel that plaintiff was guilty of the more serious offense of setting a fire, but that the evidence did support a finding of a charge of lesser severity, attempting to destroy government property with a value of less than $100.00.

*Id.* at 99. If plaintiff's likelihood of success on the merits is remote, " 'there must be a strong showing of the probability of irreparable injury to justify the issuance of the injunction.' " *Quince Orchard Valley Citizens Assoc. v. Hodel,* 872 F.2d 75, 79 (4th Cir.1989) (citing and quoting *North Carolina State Ports Authority v. Dart Containerline Co., Ltd.,* 592 F.2d 749, 750 (4th Cir.1979). As indicated from the court's discussion above, the only claim remaining before the Court is claim 1. In order for plaintiff to prevail on claim 1 he must demonstrate a violation of 42 U.S.C. § 1985. Plaintiff has not demonstrated any likelihood of success in a § 1985 claim, nor has he even to date alleged a § 1985 claim. Plaintiff's motion for a temporary restraining order will be DENIED.

## WRIT OF MANDAMUS

■ Before a writ of mandamus may issue, there must be: (1) a clear right on the part of the petitioner to the relief sought, (2) a clear duty on the part of the respondent to do the act in question, and (3) no other adequate remedy available to petitioner. *See Lovallo v. Froehlke,* 346 F.Supp. 1037, 1040–41 (W.D.N.Y.), *aff'd,* 468 F.2d 340 (2d Cir.1972), *cert. denied,* 411 U.S. 918, 93 S.Ct. 1555, 36 L.Ed.2d 310 (1973). Plaintiff has not demonstrated a clear right to the relief sought. Specifically, plaintiff has not established a violation of § 1985, a prerequisite to a finding of liability under § 1986. Even assuming items 2 and 3 above, plaintiff has not established he is entitled to the writ. Moreover, if he succeeds on claim 1, the Court will grant relief. Plaintiff's petition for a writ of mandamus will be DENIED.

Plaintiff's request for a preliminary ruling to narrow the issues is MOOT. The effect of this memorandum and the order that will issue to implement it, will, in effect, have narrowed the issues remaining in this matter. Discovery will be ordered to proceed regarding claim 1 only.

An appropriate order shall issue.