# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MAHER, SULLIVAN, and HOLDEN
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Lieutenant Colonel DAVID P. BARTLETT, JR.**
**United States Army, Appellant**

ARMY 20021244

United States Army Garrison, Fort George G. Meade
Ronald W. White, Military Judge
Lieutenant Colonel Lisa Anderson-Lloyd, Staff Judge Advocate

For Appellant:  Lieutenant Colonel Mark Tellitocci, JA; Major Allyson G. Lambert, JA; Captain Robert E. Desmond, JA (on brief).

For Appellee:  Colonel Steven T. Salata, JA; Lieutenant Colonel Theresa A. Gallagher, JA; Major William J. Nelson, JA; Captain Trevor B.A. Nelson, JA (on brief).

29 March 2007

------------------------------------
OPINION OF THE COURT
------------------------------------

HOLDEN, Judge:

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of unpremeditated murder in violation of Article 118, Uniform Code of Military Justice, 10 U.S.C. § 918 [hereinafter UCMJ].  In accordance with a pretrial agreement, the military judge dismissed the greater offense of premeditated murder and the charges of aggravated assault, obstruction of justice, and false swearing in violation of Articles 118, 128, and 134, UCMJ.   A court composed of officer members sentenced appellant to a dismissal and confinement for twenty-five years.  The convening authority approved the adjudged sentence and, pursuant to the pretrial agreement, deferred and waived forfeiture of all pay and allowances occurring by operation of Article 58b, UCMJ, and directed the waived forfeitures be paid to appellant's children.  The case is before us for review under Article 66(c), UCMJ.

Appellant asserts, *inter alia*, that "potential members from select branches [of the Army[1]] were systematically excluded from consideration for detail to appellant's court-martial." He avers the improper exclusion was based on incorrect advice the staff judge advocate (SJA) provided the convening authority when selecting court members. Appellant urges us to set aside the sentence and order a sentence rehearing. Appellant further asserts the convening authority improperly considered matters from outside the record when acting on the findings and sentence. Both assignments of error warrant discussion, but neither claim is meritorious.

**FACTS**

This case involves a murder of some notoriety at appellant's duty station, Carlisle Barracks, Pennsylvania. The homicide and ensuing efforts to conceal it occurred in the late evening on 19 March 2002 and continued into the early morning hours the following day. Appellant and his wife had argued sporadically for several days over appellant's renewed viewing of adult Internet pornography after his wife's prior warning that she would leave him if he did so. At approximately 2300 on the night of the murder, appellant was upstairs in his two-story quarters, as were his three children who were in their bedrooms. Appellant's wife called out to him to come downstairs and review the pornography with her that he had viewed during her absence, and threatened to show it to the children if he did not comply. Appellant grabbed an iron pestle from a mortar and pestle set and went downstairs. He then killed his wife by striking her twenty times in the head and face with the pestle, strangling her with a computer power cord, and striking her five more times with the pestle. In addition to her fatal injuries, the victim suffered a broken jaw, broken nose, and two skull fractures; the strangulation fractured two of the bones in her neck. Appellant attempted to make it appear that his wife had been the victim of a sexual assault as well as a homicide in order to conceal his involvement in the killing. To that end, he removed her pants and underwear, pulled her shirt and bra up to expose a breast, and penetrated her vagina with a knife sharpener, causing a one-inch-deep cut near her cervix. Appellant then began to clean the crime scene, using rags to scrub pools of blood and blood spatter from the floor, walls, and furniture. Appellant disposed of the rags and numerous items of evidence in trash

---

[1] Branches of the Army are named to identify soldiers and units trained in the principal functions associated with that branch, e.g., infantry, armor, etc. The branches are classified into two broad categories: basic and special. Army Reg. 600-3, Personnel—General: The Army Personnel Proponent System, para. 3-2 (28 Nov. 1997). Relevant to the instant case, the Medical, Dental, and Chaplain Corps branches fall into the special branch category.

bags he threw into trash receptacles at various neighbors' homes. He wrapped the semi-nude corpse in a blanket and waded into a nearby stream with the body. Appellant put the body in the water under a small bridge, propped it up against a stone wall, and returned to his quarters. As he approached his quarters, appellant noticed the upstairs bedroom lights were on. His three children were awake and looking for their mother. Appellant lied to them, said she was running and would return shortly, and got them back into bed.

At approximately 0330, appellant reported his wife missing to his children, relatives, and law enforcement officers. Members of the victim's immediate family departed by plane and car for Carlisle Barracks to help appellant find his wife; he had told them he "expected her to walk through the door any minute." Appellant also made a sworn statement to investigators in support of his missing-person claim in which he lied about the circumstances of her absence. Appellant said she had gone for a walk but never returned. While the victim's family members were enroute, the installation command mobilized every available resource to search for the victim, including all law enforcement assets. Military police went door-to-door looking for the victim, posted missing-person signs, and patrolled the installation. Appellant's neighbors participated in the search. While the search was ongoing, appellant continued to clean his quarters in an effort to conceal or destroy evidence. During the entire time of the search, appellant also continued to provide the children with false hope that their mother would return soon.

At approximately 1130, one of appellant's neighbors found the victim floating face down in the water under the bridge. Upon discovery of the body, the installation command closed the post, as it appeared that a member of the Army community had been sexually assaulted and murdered by an unknown killer who was still at large. Appellant received an outpouring of support including meals, visits, and encouragement from sympathetic community members.

After the body was discovered, Criminal Investigation Command (CID) agents searched appellant's house for clues relating to the crime. During the search, appellant rested on the couch while the victim's younger brother and appellant's children watched television. The victim's brother testified that at one point, appellant "pulled up a chair next to [him], looked at [him], and [appellant] looked like [appellant] needed to tell [him] something." When the victim's brother asked if that were the case, appellant confirmed he wanted to talk. Appellant then said he killed the victim because she discovered he viewed adult Internet pornography two weeks ago while she was out of town with the children and, "for the past 2 weeks she'd been giving him, in his words, 'Holy Hell,' and she'd threatened to leave with the kids, called him a pervert. She wouldn't let him near the two girls, wouldn't let him bathe the two girls . . . [and said] she had a moral obligation to call his future employer and let him know that he shouldn't teach . . . children." The victim's

brother asked appellant if he was aware that CID agents were in the house at that moment searching for evidence and received an affirmative reply. He then asked appellant, "Are they going to find anything?" Appellant replied, "If they look, they will." Based on appellant's admission to the victim's brother and discovery of trace evidence indicating the murder occurred inside the house, CID agents apprehended appellant.

Carlisle Barracks does not have an assigned commander who is designated as a general court-martial convening authority (GCMCA). Accordingly, the government properly attached appellant to Fort Meade, Maryland, an installation with a GCMCA, for trial. In an 18 July 2002 memorandum, the Fort Meade SJA advised the convening authority that he was not restricted to an attached list of nominees in selecting panel members for the trial. The SJA referred to an enclosed alphabetical list of all officers in the Fort Meade general court-martial jurisdiction and told the convening authority he could select anyone senior to appellant in his jurisdiction whom he believed to be "best qualified for the duty by reason of age, education, training, experience, length of service and judicial temperament." UCMJ art. 25. The SJA further advised the convening authority: "Pursuant to Army Regulation (AR) 27-10,[2] Chapter 7, you may not detail officers assigned to the Medical Corps, Medical Specialist Corps, Army Nurse Corps, Dental Corps, Chaplain Corps, Veterinary Corps, nor those detailed to Inspector General duties as courts-martial panel members."[3] Finally, the SJA noted in bold print in her memorandum: "You may detail anyone within your GCM jurisdiction that you believe meets the criteria in Article 25, UCMJ and Chapter 7 of AR 27-10 for courts-martial panel members."

At trial, the defense moved for the appointment of a new panel, claiming the

_____

[2] Army Reg. 27-10, Legal Services: Military Justice [hereinafter AR 27-10] (24 June 1996) (version in effect at time of trial).

[3] The SJA's advice correctly omitted two exceptions to the exemption provisions in AR 27-10 as they were inapplicable to the instant case. Those exceptions permit Army Medical Specialist Corps and Nurse Corps personnel to serve as court members when members of their respective corps are "involved in the proceedings." While the exceptions do not apply to the exempted members in appellant's case, we consider them for their value in demonstrating the Secretary of the Army's court-martial duty exemptions were appropriately tailored and not overbroad. The exceptions have been retained through multiple revisions of AR 27-10, including the current version, dated 16 November 2005.

Secretary of the Army exceeded his authority when he exempted officers from special branches named in AR 27-10 from court-martial service.[4] The defense asserted the Secretary of the Army's "good or bad . . . intent in [exempting officers from the particular special branches] was . . . just not important" and characterized AR 27-10 as an "illegal regulation." The parties stipulated the exemptions in AR 27-10 excluded eleven officers from consideration for selection in the instant case: one doctor (colonel, Medical Corps), eight dentists (seven colonels and one lieutenant colonel, Dental Corps), and two chaplains (both colonels, Chaplain Corps). The defense asserted Article 25, UCMJ, lacks any language authorizing limitation or amendment by the Service Secretary concerned; therefore, the Secretary of the Army improperly attempted to amend a statute via regulation when he exempted the designated branch officers from the convening authority's consideration.

## Discussion

### *Panel Composition*

Claims of error in the process of selecting panel members require de novo review. *United States v. Dowty*, 60 M.J. 163, 171 (C.A.A.F. 2004). The heart of appellant's attack upon the selection of panel members in this case is the SJA's advice to the convening authority which informed him that officers in certain special branches were exempt from service on the panel.

In denying the defense motion for a new panel, the military judge made extensive findings and held the "Secretary of the Army has the authority to limit, for a benign reason, the pool of officers from which the GCMCA is permitted to select court-martial members." The military judge noted that 10 U.S.C. § 3013 created the Secretary of the Army's position and statutorily empowered him to "assign, detail, and prescribe the duties of members of the Army" and to "prescribe regulations to

---

[4] The AR 27-10 provisions exempting the designated special branch officers from additional duties, such as court-martial service, are a consolidation of the exemptions contained in Army Reg. 20-1, Inspections, Assistance, and Investigations: Inspector General Activities and Procedures [hereinafter AR 20-1], para. 2-6a(2) (1 Feb. 2007); Army Reg. 40-1, Medical Services: Composition, Mission, and Functions of the Army Medical Department [hereinafter AR 40-1], para. 2-3b(1)(a) (1 July 1983); and Army Reg.165-1, Religious Activity: Chaplain Activities in the United States Army [hereinafter AR 165-1], para. 4-3e(2) (25 Mar. 2004). All of the cited regulations are issued by authority of the Secretary of the Army.

carry out his functions, powers, and duties . . . which functions include, *inter alia*, organizing training, servicing, administering, and maintaining the Army." The military judge also observed:

> In excluding these officers from court-martial duty, and from nearly all other routine[,] non-[military occupational specialty]-related duties, the [Secretary of the Army] has determined that the Army's critical need for officers of their unique education, training, and experience to perform duties within their unique expertise is more important to the mission than is their service on courts-martial.

Appellant's contention that the convening authority's adherence to the exemptions in Chapter 7 of AR 27-10 impermissibly narrowed the pool of potential panel members under Article 25, UCMJ, misconstrues the nature of the exemptions. The Secretary of the Army exempted members of certain branches from service on a court-martial panel based on the nature of their duties. As the military judge correctly recognized at trial, the Secretary of the Army's authority to delineate those exemptions was based on powers conferred upon him by Congress in 10 U.S.C. § 3013.[5] The Fort Meade convening authority's adherence to a statutorily authorized executive decision of the Secretary of the Army was not a denial of any of appellant's rights. Appellant, therefore, was not entitled to a new panel and the military judge properly denied his motion.

Appellant's contention raises the question of whether Article 25, UCMJ, limits 10 U.S.C. § 3013. At first glance, the Secretary of the Army's authority under 10 U.S.C. § 3013 may appear to conflict with Article 25(a), UCMJ, which provides: "*Any* commissioned officer on active duty is eligible to serve on *all* courts-martial for the trial of *any* person . . . ." (Emphasis added.) However, this court recognized more than fifty-five years ago that the Secretary of the Army has the authority to exempt persons assigned to a particular branch from court-martial service. *See United States v. Neville*, 7 C.M.R. 180 (A.B.R. 1952), *rev. denied,* 7 C.M.R. 84 (C.M.A. 1952). "*Except for the non-availability of chaplains* for such duty (AR 660-10, para. 2), this rule [of universal officer eligibility for court-martial service under Article 25(a)] is unrestricted in the Army." *Id*. at 192 (emphasis

_____

[5] While the Secretary of the Army is a convening authority under Article 22(a)(4), UCMJ, the evidence supports the conclusion that the Secretary established the excusals in question pursuant to his authority under 10 U.S.C. § 3013 and not as a convening authority. Moreover, no evidence supports the contrary conclusion.

added).[6]

10 U.S.C. § 3013(g)(1) does not contradict the Article 25 eligibility provision when it authorizes the Secretary of the Army to "assign, detail, and prescribe the duties of members of the Army." This provision grants the Secretary broad power to facilitate the discharge of his duties. "Each of the [Service] Secretaries has been granted, either specifically or by inference, the power to prescribe regulations to carry out the functions, powers, and duties of the office." *United States v. Hoesing*, 5 M.J. 355, 358 (C.M.A. 1978) (quoting *United States v. Dillard*, 4 M.J. 577, 581 (A.C.M.R. 1977)); *Lovallo v. Froehlke*, 346 F. Supp. 1037, 1043 (W.D.N.Y. 1972), *aff'd*, 468 F.2d 340 (2d Cir. 1972), *cert. denied*, 411 U.S. 918 (1973). The Secretary of the Army determined that certain Army members are unavailable to serve on court-martial panels because of the nature of their duties. This decision affects the *feasibility* of their service under Army policy, not their *eligibility* for service under the law; accordingly, it does not run contrary to Article 25. Furthermore, the Secretary of the Army's determination regarding the feasibility of officers from certain special branches serving on courts-martial is separate from the convening authority's selection of panel members under Article 25, UCMJ.

In assessing the appropriateness of the Secretary of the Army's construction of 10 U.S.C. § 3013, we apply the Supreme Court's two-pronged test for determining whether an executive agency's construction of a statute it implements is permissible: (1) "whether Congress has directly spoken to the precise question at issue;" and, if not, (2) "whether the agency's action rests on a permissible construction of the statute." *Chevron v. Natural Resources Defense Council*, 467 U.S. 837, 842-43 (1984). As Congress did not specifically address the tension between the Secretary of the Army's powers to assign duties to service members and a convening authority's selection of panel members, it becomes necessary for us to decide the second *Chevron* question. In doing so, we bear in mind "'[t]he power of an administrative agency to administer a congressionally created . . . program[, such as the Army's administration of the military justice system within its jurisdiction,] necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress.'" *Id.* at 843 (quoting *Morton v. Ruiz*, 415 U.S. 199, 231 (1974)) (second alteration in original). Since neither Article 25, UCMJ, nor 10 U.S.C. § 3013 directly address the power of the Secretary to exempt

---

[6] In *Neville*, the Army Board of Review determined that an officer's service in the Judge Advocate General's Corps was not a valid basis for a challenge for cause simply because the officer was a judge advocate. *Id*. at 191-92. At the time, the Secretary of the Army had only determined that chaplains were not available for court-martial duty. *Id*. at 192.

members from service on court-martial panels based on the nature of their duties, the present question involves one such gap. In such cases, the Supreme Court instructs that we are "not [to] substitute [our] own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." *Chevron*, 467 U.S. at 844. The question then becomes whether the Secretary of the Army's decision to exempt a grouping of Army personnel from service on court-martial panels due to the nature of their duties is a reasonable interpretation of the statute. We conclude that it is.

Several legitimate rationale support the courts-martial service exemptions in AR 27-10. First, as discussed above, they are narrowly-tailored exemptions designed to maximize the use of the Army's limited resources. Second, the exemptions do not operate as a blanket exclusion of a discrete class from service on courts-martial; officers qualified for service in one of the exempted branches who are assigned to a non-exempt branch remain eligible for panel service. Third, the exemptions do not inject an impermissible variable into the panel member selection process; the exemptions are concrete and narrowly tailored to effect the announced ends of the regulation. We shall address each of these points separately.

### A. *Exemptions Rather than Exclusions*

"[Army Medical Department] officers' duty time will be devoted, to the maximum extent possible, to actions and procedures for which they are specifically trained." AR 40-1, para 1-10a. Regarding the five relevant corps within the Army Medical Department,

> [e]xcept when regulations provide otherwise, such officers
> will not be—
> (1) Detailed as members of—
> *(a)* Courts–martial.
> *(b)* Nonprofessional boards or committees.
> (2) Assigned to other duties in which medical training is
> not essential.
> To preclude requiring the personal appearance of [Medical
> Corps (MC)] officers as witnesses to present testimony,
> every effort consistent with due process of law will be
> made to use reports, depositions, or affidavits submitted
> by MC officers in connection with courts-martial and
> boards or committees.

*Id*. at para. 2-3b(1)–(2); *see id*. at para. 2-7 (Dental Corps officers), 2-12a (Veterinary Corps officers), 2-19b (Nurse Corps officers), 2-22b (Medical Specialist Corps officers). The Secretary of the Army's intent is evident from this regulation:

officers who perform the vital medical services on which the Army relies will devote the fullest measure of their time possible to their primary duties and should be exempt from additional duty requirements that would inhibit performance of those duties. Army Reg. 27-10 is consistent with that intent and is a reasonable interpretation of Article 25, UCMJ, and 10 U.S.C. § 3013. The same reasonable interpretation of intent and purpose apply to the rationale for the exemptions for inspectors general and chaplains.[7]

Many states have historically granted exemptions from jury service based on the nature of a venireman's profession. *See Holland v. Illinois*, 493 U.S. 474, 506 n.3 (1990) (Stevens, J., dissenting) (noting that, "[a]t the time of petitioner's trial, Illinois provided exemptions [from jury duty], common to many States, for public officials, practicing physicians, and practicing attorneys, among others"); *see also Fay v. New York*, 332 U.S. 261, 267 (1947) (observing the State of New York exempted "clergymen, physicians, dentists, pharmacists, embalmers, optometrists, attorneys, members of the Army, Navy or Marine Corps, or of the National Guard or Naval Militia, firemen, policemen, ship's officers, pilots, editors, editorial writers, subeditors, reporters[,] and copy readers" from jury duty). The fact that the Secretary of the Army deemed it prudent to adopt an approach common to state practice further illustrates the reasonableness of the provisions in AR 27-10.

### B. Neither Blanket Exclusions Nor Impermissible Variables

The provisions in AR 27-10 do not create any blanket exclusions; individuals who still possess the requisite technical expertise for any of these branches are not subject to the exemption if they are not members of the branches. While appellant claims the exemption operates to deny him "the critical thinking of doctors and nurses, the compassion of chaplains, and the neutrality of inspectors general," that is simply not the case.[8] The exemptions do not interject any impermissible variables

---

[7] *See* AR 20-1, para. 2-6a(1)–(3) (exemption for inspectors general to preserve them for their specialized role); AR 165-1, para. 4-3e(1)–(3) (same for chaplains).

[8] We find no merit in the speculative theory that membership in one of the exempted branches would result in less punishment for appellant. The record of trial, including its photographic and autopsy exhibits, provides exacting detail of the 6,' 185-pound appellant's extremely violent murder of the 5'3," 130-pound mother of three children. Appellant demonstrated a notable lack of remorse while cleaning blood from the crime scene by taking breaks to view adult pornography on the Internet; he then engaged in elaborate deceptive efforts to conceal his crime from family members and law enforcement officials. Moreover, his offenses had significant victim impact. It is equally likely the professional training and

(continued . . .)

into the panel member selection process as was the case in *Dowty*, where soldiers who volunteered for court-martial service at the assistant staff judge advocate's open invitation served on the accused's panel. 60 M.J. at 165-66.[9] In appellant's case, the Secretary of the Army exempted officers from court-martial panel service based on his determination that their assigned official duties take priority over other tasks. The Secretary of the Army's practice is consistent with state practice in this area, is a reasonable application of 10 U.S.C. §3013 and Article 25, UCMJ, and does not entitle appellant to any relief.

The method of panel selection in this case was not legally defective. In fact, it exceeded requirements articulated by numerous decisions interpreting Article 25, UCMJ, selection. "Where systematic exclusion is consistent with Article 25, UCMJ, it may be permissible." *United States v. Loving*, 41 MJ 213, 287 (C.A.A.F. 1994), *aff'd on other grounds*, 417 U.S. 748 (1996); s*ee also United States v. Upshaw*, 49 M.J. 111, 113 (C.A.A.F. 1998) (finding exclusion of all technical sergeants (E6) from nominee list was "just simply a mistake," not improper motive, and not prejudicial error); *United States v. Lewis*, 46 M.J. 338, 341-42 (C.A.A.F. 1997) (finding evidence insufficient to show "court-stacking" where inordinate amount of women were detailed to and actually sat on accused's panel); *United States v. Brocks*, 55 M.J. 614, 616-19 (A.F. Ct. Crim. App. 2001) (finding exclusion of medical officers from court member nominee list did not constitute unlawful command influence or an attempt at "court-packing"), *aff'd*, 58 M.J. 11 (C.A.A.F. 2002) (summary disposition). The trial judge found "the panel detailed was well-balanced across gender, racial, staff, command[,] and branch lines. Although convened by the Fort Meade GCMCA, the court panel also included members from Carlisle Barracks." He further found that "[t]his is not a case in which individuals similarly situated to the accused were either arbitrarily or purposefully excluded from the panel."

We agree with the trial judge's finding that "[t]here is absolutely no evidence or suggestion that this exemption has been done for any reason, ideological or otherwise, except the critical role these officers fulfill by virtue of their specialized education, training, and experience." Appellant does not allege the convening authority attempted the prohibited practice of "court packing" to achieve a particular

---

(. . . continued)
experience possessed by officers from the exempted branches would lead them to view the evidence as meriting a sentence more severe than that adjudged.

[9] Our superior court concluded that introducing the variable of individuals seeking to serve on panels was error, but that it did not prejudice the accused. *Id*. at 176.

result in this case, nor does appellant allege anyone exercised unlawful command influence over the proceedings. Further, we concur with the trial judge that the convening authority acted in accordance with the lawful limitations prescribed by the Secretary of the Army who was properly exercising his statutory duties to manage the military department. Finding only proper motives here, we determine the defense claim to be without merit. "Appellant has presented no evidence that court members were . . . excluded for reasons that violate the Constitution or Article 25." *Loving*, 241 M.J. at 287. We find no error in the military judge's denial of appellant's motion.

*Clemency*

Appellant also complains the convening authority improperly considered three post-trial letters from the victim's relatives before taking action in the case. Two of the three letters were from witnesses who testified at trial; all the letters urged the convening authority to deny clemency. The SJA listed the three letters as enclosures to her post-trial recommendation (SJAR) and properly served them upon trial defense counsel for comment in accordance with Rule for Courts-Martial [hereinafter R.C.M.] 1106(f)(1). In her written response, trial defense counsel objected to the convening authority considering the letters because they "impeached the findings and/or sentence of the court" by alleging that appellant was guilty of premeditated murder or expressed displeasure with what the letters characterized as a lenient sentence. In her SJAR addendum, the SJA noted the defense objection to the letters, disagreed with it, and provided the letters to the convening authority for his consideration along with the SJAR and matters the defense submitted.

The SJA's actions regarding the letters were proper. Rule for Courts-Martial 1106(d)(5) permits the SJA to include "any additional matters [she] deem[s] appropriate . . . [i]ncluding matters outside the record." The drafters' discussion to that rule refers to R.C.M. 1107(b)(3)(B)(iii), which allows a convening authority to consider matters outside the record, provided appellant is given an opportunity to review the materials and submit matters in response. In this case, the SJA properly served the letters on appellant, received comment on the same, and included those comments when she forwarded the letters to the convening authority. The cited rules were appropriately followed; they provide due process in the form of notice and an opportunity to be heard, but do not empower the defense to prevent a convening authority from considering post-trial correspondence altogether.

Moreover, as early as 1994, the Department of Defense provided crime victims the right to submit precisely the type of post-trial communications under review in the instant case. Victims "have the right to submit a statement to the convening authority on how [they] feel about the inmate receiving clemency." Dep't of Def., Form 2703, Post-Trial Information for Victims and Witnesses of Crime

11

(Dec. 1994) (DD Form 2703); *see* Dep't of Def. Instr. 1030.2, Victim and Witness Assistance Procedures [hereinafter DODI 1030.2], para. F.4 (23 Dec. 1994). Furthermore, "convening authorities . . . may consider victim statements on the impact of crime." Dep't of Def. Dir. 1030.1, Victim and Witness Assistance [hereinafter DOD Dir. 1030.1], para. D.5 (23 Nov. 1994). The articulation of these rights predates the convening authority's review of the victim submissions in this case by more than eight years.[10]

Recognizing that the victim clemency matters in this case were authorized communications to the convening authority,[11] we encourage SJAs to follow the example in the instant case and act as conduits for victim submissions to the convening authority. Serving victim clemency correspondence on the accused for comment before convening authority action protects an accused's due process rights under the Rules for Courts-Martial and preserves the actual and perceived fairness of the military justice system. We further urge SJAs to use discretion when advising in this area.

We have considered the remaining assignments of error and the matters appellant personally raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and find them to be without merit.

The findings of guilty and sentence are affirmed.

Senior Judge MAHER and Judge SULLIVAN concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

---

[10] Victim clemency correspondence rights were reaffirmed in 2004 when they were reissued without change. *See* DD Form 2703 (May 2004); DODI 1030.2, para. 6.4 (4 June 2004); DOD Dir. 1030.1, para. 4.5 (13 Apr. 2004); *see also* AR 27-10, para. 18-14b(1) (16 Nov. 2005).

[11] Victim impact statements may also be forwarded to the Army Clemency and Parole Board. *See* AR 27-10, Appendix D, para. D-1l(13).