UNITED STATES, Appellee

v.

David P. BARTLETT Jr., Lieutenant Colonel
U.S. Army, Appellant

No. 07-0636

Crim. App. No. 20021244

United States Court of Appeals for the Armed Forces

Argued May 6, 2008

Decided July 7, 2008

STUCKY, J., delivered the opinion of the Court, in which EFFRON,
C.J., and BAKER and RYAN, JJ., joined.  ERDMANN, J., filed a
separate concurring opinion.

<u>Counsel</u>


For Appellant:  Captain Candace N. White Halverson (argued);
Colonel Christopher J. O'Brien and Major Sean F. Mangan (on
brief); Lieutenant Colonel Steven C. Henricks, Captain Tyesha
Elizabeth Lowrey, and Captain Kathleena R. Scarpato.

For Appellee:  Captain Sarah J. Rykowski (argued); Colonel John
W. Miller II, Major Elizabeth G. Marotta, and Captain Michael C.
Friess (on brief); Captain Trevor B. A. Nelson.

Military Judge:  Ronald W. White


<u>**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.**</u>

Judge STUCKY delivered the opinion of the Court.

A military judge sitting as a general court-martial convicted Appellant, Lieutenant Colonel David P. Bartlett Jr., pursuant to his pleas, of unpremeditated murder, in violation of Article 118, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 918 (2000). A panel of members sentenced him to a dismissal and confinement for twenty-five years. In accordance with a pretrial agreement, the convening authority deferred automatic forfeitures until his action, waived them thereafter for six months, and otherwise approved the findings and sentence. The United States Army Court of Criminal Appeals affirmed the findings and sentence. United States v. Bartlett, 64 M.J. 641, 649 (A. Ct. Crim. App. 2007).

We granted review of the following issue:

> WHETHER THE SECRETARY OF THE ARMY'S DECISION TO EXEMPT FROM COURT-MARTIAL SERVICE OFFICERS OF THE SPECIAL BRANCHES NAMED IN AR 27-10 CONTRADICTS ARTICLE 25(d)(2), UCMJ, WHICH REQUIRES A CONVENING AUTHORITY TO SELECT COURT-MARTIAL MEMBERS BASED UPON AGE, EDUCATION, TRAINING, EXPERIENCE, LENGTH OF SERVICE, AND JUDICIAL TEMPERAMENT.

We hold that the Secretary of the Army impermissibly contravened the provisions of Article 25, UCMJ, 10 U.S.C. § 825 (2000). However, we conclude that on these facts, the error was harmless. We therefore affirm.

2

I.

Prior to trial, on July 18, 2002, the garrison staff judge advocate for Fort Meade, Maryland, sent a memorandum to the garrison commander, who was the general court-martial convening authority (GCMCA) for the present case. The memorandum dealt with the selection of court members for Appellant's trial. It recited, inter alia, that the GCMCA could not "detail officers assigned to the Medical Corps, Medical Specialist Corps, Army Nurse Corps, Dental Corps, Chaplain Corps, Veterinary Corps, nor those detailed to Inspector General duties as courts-martial panel members." The authority for this statement was given as "AR 27-10, Chapter 7." The parties stipulated that the GCMCA acted in accordance with this advice and did not detail any officer to the court-martial who fell within one of the prohibited classes. The parties further stipulated that the GCMCA had, at the time of selecting the panel, eleven officers within his general court-martial convening authority who were senior in grade or rank to Appellant but who fell within one of the prohibited classes.

At trial, the defense moved for a new court-martial panel, arguing that the Secretary of the Army exceeded his authority in exempting officers of the branches, set out in Dep't of the Army Reg. (AR) 27-10, Military Justice (Aug. 20, 1999), from service on courts-martial. The military judge made extensive findings

of fact and law and denied the motion.  The Army Court of Criminal Appeals affirmed, citing Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984), and the analysis therein.  Bartlett, 64 M.J. at 645-49.

                                II.

    We review claims of error in the selection of members of courts-martial de novo as questions of law.  United States v. Dowty, 60 M.J. 163, 171 (C.A.A.F. 2004); United States v. Kirkland, 53 M.J. 22, 24 (C.A.A.F. 2000).

    At the outset, we are constrained to point out that although relied on by both sides, Chevron is inapposite to this case.  Chevron deals with the deference given to an administrative agency's interpretation of a regulatory statute, the administration of which has been committed to it by Congress.  467 U.S. at 839.  That is not this case.  Instead, here Congress has enacted a detailed statute -- Article 25, UCMJ -- which deals explicitly with the question of who may serve on courts-martial.  Congress has further, in Article 36, UCMJ, 10 U.S.C. § 836 (2000), delegated to the President the authority to prescribe by regulation procedures for the trial of courts-martial, insofar as such regulations are not inconsistent with the UCMJ.  United States v. Jenkins, 7 C.M.A. 261, 262-63, 22 C.M.R. 51, 52-53 (1956).  Such regulations are also to be "uniform insofar as practicable."  Article 36(b), UCMJ.

                                 4

A general and wholly separate statute, 10 U.S.C. § 3013 (2000), establishes the position of Secretary of the Army and grants the Secretary broad general powers over the Department of the Army. Subsection (g), in pertinent part, states:

> (g) The Secretary of the Army may --
>
> (1) assign, detail, and prescribe the duties of members of the Army and civilian personnel of the Department of the Army;
>
> . . . .
>
> (3) prescribe regulations to carry out his functions, powers, and duties under this title.

It appears clear that the Secretary issued the underlying personnel management regulations collected in AR 27-10 pursuant to his authority to "prescribe the duties of members of the Army."[1] Id. We, therefore, are faced with a situation in which Congress has enacted detailed and specific legislation dealing with a subject common to all the armed forces, while a service

---

[1] While the authority cited for the exclusions is AR 27-10, Chapter 7, Court Membership and Other Related Military Justice Duties by Non-JAGC Personnel, it is clear from the text of that regulation that it is a collection of substantive prohibitions applicable to particular branches and duties and contained in individual personnel management regulations. E.g., AR 165-1, Chaplain Activities in the United States Army, ch. 4, para. 4-3.e.(2) (Mar. 25, 2004); AR 40-1, Medical Services, Composition, Missions and Functions of the Army Medical Department, ch. 2 (July 1, 1983) (medical, dental, nurse, veterinary, and medical service corps, medical specialist corps); AR 20-1, Inspector General Activities and Procedures, ch. 2, para. 2-6 (Feb. 1, 2007).

secretary, pursuant to a separate general statute, has issued

regulations[2] dealing with the same subject.

In addressing the apparent tension between Article 25,

UCMJ, and the Secretary's implementation of his enabling

authority, we apply standard principles of statutory

construction. See United States v. Lopez, 35 M.J. 35, 39

(C.M.A. 1992); United States v. Baker, 18 C.M.A. 504, 507, 40

C.M.R. 216, 219 (1969). While statutes covering the same

subject matter should be construed to harmonize them if

possible, this does not empower courts to undercut the clearly

expressed intent of Congress in enacting a particular statute.

United States v. Johnson, 3 M.J. 361, 363 (C.M.A. 1977); United

States v. Walker, 7 C.M.A. 669, 674, 23 C.M.R. 133, 138 (1957);

United States v. Lucas, 1 C.M.A. 19, 22, 1 C.M.R. 19, 22 (1951).

Congress did not see fit to include in Article 25, UCMJ,

any limitations on court-martial service by any branch, corps,

or occupational specialty among commissioned officers of the

---

[2] It appears that only the Army exempts medical and related
personnel and inspectors general from court-martial duty by
regulation. The services appear to have a uniform policy of
exempting chaplains. Air Force Instr. 52-101, Chaplain,
Planning and Organizing, para. 2.1.7. (May 10, 2005); Secretary
of the Navy Instr. 1730-7B, Religious Ministry Support Within
the Department of the Navy, para. 4.a. (Oct. 12, 2000). Navy
chaplains serve the needs of the Coast Guard and are not to be
assigned collateral duties which involve serving as a member of
a court-martial. Coast Guard Chaplains Orientation Manual, ch.
3, para. B.7.(5), at 63, available at http://www.uscg.mil/comdt/
cocg/docs/orientationmanual.pdf (last visited June 25, 2008).

armed forces.  Rather, it cast the eligibility of such officers to serve in broad and inclusive terms in Article 25(a), UCMJ (emphasis added):  "<u>Any</u> commissioned officer on active duty is eligible to serve on <u>all</u> courts-martial for the trial of <u>any</u> person who may lawfully be brought before such courts for trial."  Within that broad class, the convening authority of a court-martial is to detail those members who, "in his opinion, are best qualified for the duty by reason of age, education, training, experience, length of service, and judicial temperament."  Article 25(d)(2), UCMJ.

Equally as important, Congress limited the broad and inclusive terms of Article 25, UCMJ, by prohibiting only certain members of the armed forces from acting as members of courts-martial.  For example, a member who is the accuser or a witness for the prosecution, or who has acted as investigating officer or counsel in a case, may not sit on that case.  Article 25(d)(2), UCMJ.  Nor may a warrant officer or enlisted person sit as a member in a case involving a commissioned officer, like this one.  Article 25(b), 25(c)(1), UCMJ.  Unless it is unavoidable, no member of the armed forces junior in rank or grade to the accused member may sit on that member's court-martial.  Article 25(d)(1), UCMJ.

The President, to whom regulatory authority is committed by Article 36, UCMJ, has similarly seen fit to take a nonrestrictive view of court-martial service. Rule for Courts-Martial (R.C.M.) 502(a), which sets out the basic qualifications of members of courts-martial, adds nothing to the statutory language. R.C.M. 912(f), which does deal with disqualification for service, is cast not in terms of prohibition from detail to court-martial service, but in terms of allowable challenges for cause. The disqualifying factors in the Rules for Courts-Martial, as in Article 25, UCMJ, are limited to two: (1) actual involvement in the case (as, for example, an investigating officer); and (2) formal distinctions of grade or rank (as in, for example, the prohibition of a warrant officer's sitting on a commissioned officer's court-martial). The implication is clear: Congress and the President crafted few prohibitions on court-martial service to ensure maximum discretion to the convening authority in the selection process, while maintaining the basic fairness of the military justice system.

It is inescapable, then, that the Army regulations limiting detail of commissioned officers to court-martial duty, collected in AR 27-10, directly conflict with the provisions of Article 25, UCMJ, on the same subject. Congress did not simply set out broad criteria in that article and leave it to administrative implementation; rather, it set out detailed requirements,

8

United States v. Bartlett, No. 07-0636/AR

disqualifications, and prohibitions for courts-martial of varying classes of members of the armed forces. As such, the Army regulations must yield to the clear language of Article 25, UCMJ. See, e.g., United States v. Simpson, 10 C.M.A. 229, 232, 27 C.M.R. 303, 306 (1959).[3]

Moreover, the Secretary's application of 10 U.S.C. § 3013(g) (2000) runs afoul of the accepted principle of statutory construction that in cases of direct conflict, a specific statute overrides a general one, regardless of their dates of enactment. 2B Norman J. Singer, Statutes and Statutory Construction § 51.02, at 187 (7th ed. 2000); Morton v. Mancari, 417 U.S. 535, 550-51 (1974); Bulova Watch Co. v. United States, 365 U.S. 753, 758 (1961); United States v. Mitchell, 44 C.M.R. 649, 651 (A.C.M.R. 1971). The general grant of authority to the Secretary to run the Army, broad and necessary as it is, cannot trump Article 25, UCMJ, which is narrowly tailored legislation dealing with the precise question in issue. We are left, then, with a clear explication of the convening authority's broad power to detail any officer to a panel as long as the requirements of Article 25, UCMJ, are met.

---

[3] In Simpson, we held that a Manual provision concerning automatic reduction in grade contravened the statutory prohibition against increasing the severity of an adjudged sentence. 10 C.M.A. at 232, 27 C.M.R. at 306. Congress responded by amending the UCMJ to insert the present Article

III.

This does not, however, end our inquiry.  Having found error, we must determine what, if any, relief to grant Appellant.  As Appellant pled guilty before the military judge, he has asked only for a new sentencing hearing.  We may not find the sentence incorrect in law "unless the error materially prejudice[d] the substantial rights to the accused."  Article 59(a), UCMJ, 10 U.S.C. § 859(a) (2000).

Citing Arizona v. Fulminante, 499 U.S. 279, 310 (1991), and United States v. Greene, 20 C.M.A. 232, 239, 43 C.M.R. 72, 79 (1970), Appellant asserts that the error was structural, thus obviating the need to show prejudice.  Alternatively, he argues that he was prejudiced because his panel lacked the benefit of the special skills and education of the special branch officers.  Both arguments fail.

A.

There is a strong presumption that an error is not structural.  Rose v. Clark, 478 U.S. 570, 579 (1986), overruled on other grounds by Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).  In Fulminante, the Supreme Court noted that certain constitutional errors, such as "the unlawful exclusion of members of the defendant's race from a grand jury," were

---

58a, UCMJ, 10 U.S.C. § 858a (2000), giving legislative sanction to the practice.  Pub. L. No. 86-633, 74 Stat. 468 (1960).

structural defects in the trial mechanism which defied analysis for harmless error. 499 U.S. at 309-10 (citing Vasquez v. Hillery, 474 U.S. 254 (1986)). Appellant's case, however, deals with a statutory rather than constitutional error.

Both before and after the Supreme Court's decision in Fulminante, this Court has employed a case-specific rather than a structural-error analysis in deciding issues of improper court member selection. See, e.g., Greene, 20 C.M.A. at 238, 43 C.M.R. at 78 (reversing after concluding that the record raised a reasonable doubt as to whether the proper standard for selecting members had been used); United States v. McClain, 22 M.J. 124, 132 (C.M.A. 1986) (holding that the government failed to prove beyond a reasonable doubt that members were not selected for the improper purpose of avoiding lenient sentences); United States v. Hilow, 32 M.J. 439, 440-42 (C.M.A. 1991) (concluding that the government failed to prove beyond a reasonable doubt that members were not selected for the improper purpose of limiting the panel to "'supporters of a command policy of hard discipline'"); United States v. Upshaw, 49 M.J. 111, 113 (C.A.A.F. 1998) (finding that the appellant did not demonstrate prejudice from an administrative error that resulted in an improper limitation on the pool of potential members). Appellant has not shown that a structural error approach is warranted under the circumstances of this case.

The burden of demonstrating prejudice, or the lack thereof, from nonconstitutional error in the detailing of court members depends on the manner in which the error occurred. In those cases where we have concluded that the error resulted from unlawful command influence -- attempts to affect the outcome of the trial through the selection of particular members -- we have not affirmed unless the government established beyond a reasonable doubt that the error was harmless. See Hilow, 32 M.J. at 442; McClain, 22 M.J. at 132. Where a convening authority has intentionally included or excluded certain classes of individuals from membership, in an attempt to comply with the requirements of Article 25, UCMJ -- such as exclusion of junior officers and enlisted members because senior officers possess better maturity and judgment -- we have placed the burden on the government to demonstrate lack of harm. See Dowty, 60 M.J. at 173-75 (holding that the government established lack of prejudice where convening authority's legal staff employed novel selection process -- from volunteers). On the other hand, when there is a simple administrative error, the burden is on the appellant to show prejudice. Upshaw, 49 M.J. at 113 (concluding that the burden was on the appellant to show prejudice when the staff judge advocate improperly limited the pool of eligible court members because he thought the accused was an E-6, when he was an E-5).

B.

This case represents a novel question in that the source of the error is the Army regulation that required the convening authority to exclude certain classes of officers from consideration. Nevertheless, as this error was not a simple administrative mistake, we conclude the Government has the burden of showing the error was harmless.[4]

In Appellant's case (1) there is no evidence that the Secretary of the Army enacted the regulation with an improper motive; (2) there is no evidence that the convening authority's motivation in detailing the members he assigned to Appellant's court-martial was anything but benign -- the desire to comply with a facially valid Army regulation; (3) the convening authority who referred Appellant's case to trial was a person authorized to convene a general court-martial; (4) Appellant was sentenced by court members personally chosen by the convening authority from a pool of eligible officers; (5) the court members all met the criteria in Article 25, UCMJ; and, (6) as

---

[4] Although the burden is on the Government to show there was no prejudice, Appellant has alleged that he was prejudiced because his panel lacked the benefit of the special skills and education of the special branch officers. Appellant offers nothing more than supposition that the special branch officers would bring skills unique to their occupations -- "critical thinking" (doctors and nurses), "compassion" (chaplains), and "neutrality" (inspectors general). While such prejudice is speculative at best, we considered this allegation of prejudice in determining whether the Government had met its burden.

13

the military judge found, the panel was "well-balanced across gender, racial, staff, command, and branch lines."  Under these circumstances, we are convinced the error in this case was harmless.

IV.

The decision of the United States Army Court of Criminal Appeals is affirmed.

United States v. Bartlett, No. 07-0636/AR

ERDMANN, Judge (concurring):

I agree with the majority's holding that the Secretary of the Army impermissibly contravened the provisions of Article 25, Uniform Code of Military Justice, 10 U.S.C. § 825 (2000), and with the conclusion that on the facts of this case, the error was harmless beyond a reasonable doubt. While I also agree that a structural-error analysis is not warranted in this case, I write separately to emphasize that the issue as to whether a structural-error approach could ever be the appropriate framework for considering alleged errors in the selection of courts-martial members was neither briefed nor argued by the parties and is not an issue that is necessary to the resolution of this case. The majority opinion states, "Both before and after the Supreme Court's decision in Fulminante, this Court has employed a case-specific rather than a structural-error analysis in deciding issues of improper court member selection." United States v. Bartlett, ___ M.J. ___ (11) (C.A.A.F. 2008). I do not believe that language should be read to foreclose the possible application of structural-error analysis to other member-selection cases.