# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

**UNITED STATES**

**v.**

**Airman First Class THIENBUU J. NGUYEN**
**United States Air Force**

**ACM 38570**

**16 April 2015**

Sentence adjudged 22 January 2014 by GCM convened at Incirlik Air Base, Turkey. Military Judge: Christopher F. Leavey.

Approved Sentence: Dishonorable discharge, confinement for 5 years, forfeiture of all pay and allowances, and reduction to E-1.

Appellate Counsel for the Appellant: Captain Jeffrey A. Davis.

Appellate Counsel for the United States: Lieutenant Colonel John E. Owen and Gerald R. Bruce, Esquire.

Before

MITCHELL, CONTOVEROS, and BENNETT
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

BENNETT, Judge:

The appellant providently pled guilty to one specification of failure to obey a lawful order; five specifications of sexual abuse of a child (two specifications of intentionally exposing his genitalia and three specifications of communicating indecent language); one specification of sexual assault of a child; four specifications of knowingly and wrongfully persuading, inducing, or enticing a child to engage in sexual activity; one specification of knowingly and wrongfully persuading, inducing, or enticing children to produce child pornography; and one specification of knowingly and wrongfully

possessing lewd computer images of a child, in violation of Articles 92, 120(b), and 134, UCMJ, 10 U.S.C. §§ 892, 920(b), 934.

A military judge sitting alone sentenced the appellant to a dishonorable discharge, confinement for 6 years, forfeiture of all pay and allowances, and a reduction to E-1. Pursuant to a pretrial agreement, the convening authority approved confinement for 5 years and the remainder of the sentence as adjudged.

The appellant asserts that the statements provided to the convening authority by the parents of the victims exceeded the scope of permissible information and resulted in prejudicial harm.[1]  Finding that no error materially prejudicial to a substantial right of the appellant occurred, we affirm.

*Background – Charges & Specifications*

The victims in this case ranged in age from 12 to 15 years of age.  The appellant had been a volunteer leader at a chaplain's youth club, known as Club Beyond, on Incirlik Air Base, Turkey.  He became acquainted with all the victims either through his volunteer work at Club Beyond or through the use of online communication services such as *Facebook*, *Kik*, *Tumblr*, and *Skype*.  The appellant used these Internet services to intentionally expose his genitalia to the victims; communicate indecent language to them; and to wrongfully persuade, induce, or entice them into engaging in sexual activity with him and/or to produce child pornography.

ERD was 13 years old when she first came into contact with the appellant on Facebook.  From October 2012 to July 2013, while the appellant and ERD interacted, he was aware of ERD's age.  ERD attended Club Beyond and trusted the appellant because he identified himself as a "leader."  They communicated using a variety of online services.  The appellant repeatedly asked her to meet so they could have sex, told her that he would marry her if they had sex, and asked her to keep their conversations secret.  ERD made it known to the appellant that she was having trouble in her personal life.  The appellant knowingly possessed two lewd images of ERD displaying her bare breasts, and asked her on numerous occasions to send him images of her vagina, but she never sent such images.

---

[1] In addition to the asserted error, we note the following post-trial issue that was not raised by the appellant.  The appellant was subjected to pretrial restraint.  The charge sheet indicates that the appellant was restricted to base from 23 August 2013 until the day of trial.  The personal data sheet (PDS) attached to the pretrial advice correctly notes that the appellant was restricted to base.  Attached to the staff judge advocate's (SJA) recommendation is a copy of the PDS that was admitted at trial.  This PDS states that there was no pretrial restraint.  However, the appellant has not objected to this erroneous PDS and has, for reasons explained further in this opinion, forfeited his right to now raise this issue.  It was plain error for the SJA to not include the correct information in the PDS.  However, we do not find that the error materially prejudiced a substantial right of the appellant.

The appellant interacted with GNP between October 2012 and August 2013. During that timeframe, the appellant was aware that GNP was 13 years old. GNP saw the appellant at Club Beyond, but they first became acquainted after he saw her picture on ERD's Facebook page and sent GNP a "friend" request. Between October 2012 and July 2013, the appellant asked GNP on multiple occasions to send him pictures of her vagina and bare breasts. The appellant sent GNP several images of his penis. He also continually asked to meet GNP so they could engage in sexual intercourse and other sexual acts.

In March of 2013, ERD and GNP, reported the appellant for engaging in lewd conversations with them. Subsequently, the Air Force Office of Special Investigations (AFOSI) opened an investigation, the appellant was apprehended, and he was issued a no-contact order. In May of 2013, after his first no-contact order lapsed, the appellant reinitiated contact with GNP, again began to talk to her about engaging in sexual activity, and asked her to meet him to engage in sexual acts. The appellant and GNP met four to six times in a park on Incirlik Air Base, usually around 0200-0300 so GNP's parents would not find out. The appellant was about to turn 21, and he persistently talked with GNP about engaging in sexual intercourse with him as a birthday present. At the time, GNP was 14 years old. Eventually, GNP had sexual intercourse with the appellant. Afterwards, the appellant told GNP that she was lucky that he trusted her and begged her not to tell AFOSI about their sexual intercourse. GNP agreed and said nothing about their sexual intercourse until the appellant's Article 32, UCMJ, 10 U.S.C. § 832, investigation. A second no-contact order was issued on 23 July 2013.

Between 10 October 2012 and 15 March 2013, the appellant interacted with CIC; she was 15 years old, and the appellant was aware of her age. The appellant and CIC met at Club Beyond and communicated over Facebook and Kik. The appellant complimented CIC on a daily basis in order to make her more willing to engage in various acts for his sexual gratification or to continue communicating with him online. The appellant sent CIC a picture of his penis via Kik. Between November and December 2012, the appellant daily asked CIC to meet him so they could engage in sexual intercourse or perform other sexual acts together. The appellant asked CIC to send him pictures of her vagina and breasts. On one occasion, CIC sent him a picture of her breasts.

From 10 October 2012 to 15 March 2013, the appellant also communicated with RSL, a female he knew was 12 years old. The appellant had been introduced to RSL as one of the "leaders" at Club Beyond. RSL became "friends" with the appellant on Facebook in late 2012. ERD helped RSL sound "flirty" during one of their Facebook conversations. The appellant asked RSL to meet him on multiple occasions; he wanted her to come to his dormitory room so they could have sexual intercourse and perform other sexual acts together.

*Background – Post-trial Processing*

On 6 February 2014, both the appellant and his trial defense counsel received a copy of the staff judge advocate recommendation (SJAR). The appellant and trial defense counsel each submitted matters in clemency. They both asked that the convening authority disapprove the appellant's dishonorable discharge and instead approve a bad-conduct discharge. Neither specifically asked for a reduction in the appellant's confinement. In fact, trial defense counsel stated that the appellant was "not asking that his time in confinement be shortened or that [the convening authority] overturn any portion of his conviction."

The parents of two of the appellant's victims submitted memoranda for the convening authority to consider. RSL's father submitted a memorandum dated 11 February 2014 and ERD's parents jointly submitted a memorandum dated 15 February 2014. On 19 February 2014, the appellant signed a receipt for victim impact statements, furnished in compliance with Air Force Instruction (AFI) 51-201, *Administration of Military Justice*, ¶ 9.10 (6 June 2013). Unfortunately, this receipt does not list any attachments. However, the addendum to the SJAR dated 5 March 2014 contained "new matter" and was served on the appellant and his trial defense counsel. The addendum lists, as attachments, the "victim impact statements" from ERD's mother and father and RSL's father. Both the appellant and trial defense counsel acknowledged receipt of the addendum, including the attachments, on 6 March 2014.

The SJA advised the convening authority that on 14 March 2014, in an undated memorandum, the appellant and trial defense counsel chose not to respond to the new matter in the addendum. The record of trial contains an undated waiver memorandum signed by the appellant. This waiver memorandum appears to be based on the sample waiver memorandum provided by Figure 9.4 of AFI 51-201. In his waiver memorandum, among other things, the appellant states:

> I have been briefed by my defense counsel . . . concerning my rights to submit additional matters to the convening authority. . . . I hereby elect that I will not submit any additional matters for the convening authority's consideration. This waiver is voluntary and no one coerced me in any way or made any promises in regard to my decision. I understand that this waiver is irrevocable once submitted.

In a "First Indorsement" below the appellant's signature on the waiver memorandum, trial defense counsel acknowledged that the appellant received the addendum and advice concerning his right to submit additional matters for consideration by the convening authority and that the appellant voluntarily waived his right to submit

additional matters. However, trial defense counsel asked that the clemency matters already submitted by the appellant "be maintained and considered."

*Analysis*

Whether post-trial processing was completed properly is a question of law, which this court reviews de novo. *United States v. Sheffield*, 60 M.J. 591, 593 (A.F. Ct. Crim. App. 2004) (citing United *States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000)). When reviewing post-trial errors, we recognize the convening authority is an appellant's "best hope for sentence relief." *United States v. Lee*, 50 M.J. 296, 297 (C.A.A.F. 1999) (quoting *United States v. Bono*, 26 M.J. 240, 243 n.3 (C.M.A. 1988)) (internal quotation marks omitted). The convening authority, not a court of criminal appeals, is empowered to grant clemency for equitable reasons. *United States v. Nerad*, 69 M.J. 138, 145 (C.A.A.F. 2010). "Because of the highly discretionary nature of the convening authority's action on the sentence, we will grant relief if an appellant presents 'some colorable showing of possible prejudice.'" *Kho*, 54 M.J. at 65 (quoting *United States v. Wheelus*, 49 M.J. 283, 289 (C.A.A.F. 1998)); *see also United States v. Scalo*, 60 M.J. 435 (C.A.A.F. 2005).

The first question that we must consider is whether the asserted issue was preserved, waived or forfeited. According to Rule for Courts-Martial 1106(f)(6) and *Scalo*, 60 at 436, *waiver* occurs when counsel fails to comment on matters in the staff judge advocate's recommendation. However, our superior court's decision in *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009) recognizes that military courts have failed to "consistently distinguish between the terms 'waiver' and 'forfeiture.'" *Gladue* held that waiver is the "intentional relinquishment or abandonment of a known right," which precludes appellate review of an issue, while forfeiture is "the failure to make the timely assertion of a right" leading to plain error review on appeal. *Id.* (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)) (internal quotation marks omitted). Following *Gladue*, the term "forfeiture" should generally characterize the effect of a failure to timely comment on matters in the staff judge advocate's recommendation. *See United States v. Parker*, 73 M.J. 914 (A.F. Ct. Crim. App. 2014) (stating that the appellant forfeited, rather than waived, a claim that erroneous information was attached to the staff judge advocate's recommendation).

The appellant, who had the assistance of counsel, voluntarily submitted an irrevocable waiver. We find that this amounts to an "intentional relinquishment or abandonment of a known right" and is substantially different than an appellant who chooses to respond in part or an appellant who simply remains silent. *Cf. United States v. Parker*, ACM S32148 (A.F. Ct. Crim. App. 29 October 2014) (unpub. op.) (holding an appellant who declined to submit clemency and failed to object to the SJAR forfeited a later claim). The appellant chose to waive his objections to the new matters in the

addendum.  Because waiver applies, the issue is "extinguished and may not be raised on appeal."  *Gladue*, 67 M.J. at 313.

Even if we were to determine that the appellant did not specifically waive his objections to the new matter, his failure to object would constitute forfeiture and the appellant would still not be entitled to any relief.  When an appellant forfeits a right, we apply a plain error analysis on appellate review.  Under plain error analysis, the appellant bears the burden of showing: (1) there was an error, (2) it was plain or obvious, and (3) the error materially prejudiced a substantial right of the appellant.  *Kho*, 54 M.J. at 65.  Although the threshold for establishing prejudice in this context is low, the appellant must make at least "some colorable showing of possible prejudice."  *Scalo*, 60 at 437.  We conclude there was no error in providing the statements from the parents of the victims as new matter for the convening authority to consider during clemency.

After a court-martial, victims may be invited to "provide input, in the form of a written impact statement, to the convening authority's [Staff Judge Advocate (SJA)], as to whether or not the convening authority should approve the findings and sentence or grant some form of clemency."  AFI 51-201, ¶ 9.9.[2]  At the time action was taken in this case, 10 U.S.C. § 860(c)(1) stated that "[t]he authority . . . to modify the findings and sentence of a court-martial is a matter of command prerogative involving the sole discretion of the convening authority."  *See also* Rule for Courts-Martial (R.C.M.) 1107(b)(1).[3]  Moreover, the Rules for Court-Martial give a convening authority broad discretion to determine what to consider during the clemency process.  Before taking action, the convening authority must consider the result of trial, SJAR, matters submitted by the accused under R.C.M. 1105 or, if applicable, matters submitted under R.C.M. 1106(f) and 1107(b)(3)(A).  Additionally, the convening authority may consider:

> *Such other matters as the convening authority deems appropriate.*  However, if the convening authority considers matters adverse to the accused from outside the record, with knowledge of which the accused is not chargeable, the accused shall be notified and given an opportunity to rebut.

R.C.M. 1107(b)(3)(B)(iii) (emphasis added).  The law permits the convening authority to consider *any* information, including information from outside the record of trial that an

---

[2] Air Force Instruction 51-201, *Administration of Military Justice*, Figure 9.2 (6 June 2013),  provides a sample letter that could be used to invite a victim to provide input, and suggests that the victim impact statement "could" describe the impact the accused's crime had on the victim's life, and that the statement "should not reference any crimes for which [the accused] was not convicted of by the court-martial in order to avoid any prejudice to (his/her) post-trial rights."

[3] Pursuant to reforms made in the National Defense Authorization Act for Fiscal Year 2014, significant changes to 10 U.S.C. § 860 went into effect on 24 June 2014, but those changes are not relevant to this analysis.

accused has no knowledge of, as long as the accused is notified and given an opportunity to rebut the information.

The victim impact statements submitted by RSL's and ERD's parents qualify as "new matter." *See* Rule for Courts-Martial 1106(f)(7) and its nonbinding discussion.

> "New matter" is not defined in the Manual for Courts-Martial. And [our superior court] has not provided a comprehensive definition of "new matter." *United States v. Frederickson*, 63 M.J. 55, 56 (C.A.A.F. 2006) (citing *United States v. Catalani*, 46 M.J. 325, 326 (C.A.A.F. 1997)). But [our superior court has stated that] we are not without guidance. The Discussion to R.C.M. 1106(f)(7) provides that: "'New matter' includes discussion of the effect of new decisions on issues in the case, matter from outside the record of trial, and issues not previously discussed."

*United States v. Scott*, 66 M.J. 1, 3 (C.A.A.F. 2008). AFI 51-201, Section 9D, does nothing to limit what a convening authority may consider as "new matter" before taking action. The key with a "new matter" is that, if it is to be considered by a convening authority, then it must be served on an accused and defense counsel, and they must be given the opportunity to respond. In this case, the new matter was served on the appellant and his defense counsel, and they chose not to submit additional matters for consideration to the convening authority.

In light of the facts and circumstances of this particular case, the letters written by ERD's and RSL's parents contained nothing that was inappropriate. ERD's parents submitted input asking the convening authority not to reduce the appellant's sentence to confinement, and they expressed their concern that the appellant could be a danger to young girls in the future. The appellant now claims that the victim impact statement provided by ERD's parents had "very little to do with victim impact." We disagree. While ERD's parents may have expressed concern for other children who might be harmed by the appellant in the future, those concerns were based on their daughter's experiences as well as the experiences of the other victims. Furthermore, their letter does address the impact of the appellant's actions on their daughter. They argue, among other things, that ERD's innocence can never be returned and provide an excerpt from ERD's diary to demonstrate how she was affected by the appellant's crimes. The appellant takes no issue with the victim impact statement provided by RSL's father, except where RSL's father urges the convening authority not to issue clemency because the appellant may be paroled and because, in RSL's father's opinion, the pretrial agreement's 5-year sentence limitation did "not fit the crimes." Even assuming that the content the appellant finds objectionable in both these letters does not qualify as victim impact, there is still no

prohibition—statutory, regulatory, or otherwise—that prevented the convening authority from considering it.

The appellant seems to take issue with the victim impact statements not just because, in his view, they were not sufficiently limited to "actual victim impact," but because they were "without bounds." Again, we disagree that these statements were in any way inappropriate. The appellant pled guilty to sexual offenses involving four children ranging in age from 12 to 15 years old, with all his offenses occurring over roughly the same time period. The record contains evidence that he used his status as a "leader" in a chaplain youth group to identify his victims and ingratiate himself with them. The appellant was proficient in his persistent use of the Internet to communicate indecent language, expose his genitalia, and entice his victims to produce child pornography and/or engage in various sexual acts with him. He manipulated these children in a variety of ways including by making them feel guilty or by promising to marry them. The record reveals that the appellant clearly knew that what he was doing was wrong but that he did it anyway. The appellant was given two no-contact orders. After the investigation began and after he was apprehended and made statements to AFOSI, the appellant re-initiated contact with one of his victims. He convinced this 14-year-old girl to have sex with him for his 21st birthday present. He took steps to conceal his activities, and he tried to convince his victims to keep their activities with him a secret. Given the circumstances of the crimes that he pled guilty to, the opinions expressed by ERD's and RSL's parents about the appellant's future dangerousness and predatory nature were not out of place, nor was it inappropriate for them to express these opinions in their letters.

The appellant affirmatively waived his objection to the new matter, and the issue is extinguished on appeal. Alternatively, at a minimum, the appellant failed to raise any objection to these victim impact statements, forfeiting his right to raise an issue concerning their content on appeal. The content of these victim impact statements did not exceed the scope of what was appropriate for consideration by the convening authority under AFI 51-201 or the applicable Rules for Courts-Martial. Nor was the content of the letters in any other way inappropriate. Thus, the SJA did not err by providing unredacted copies to the convening authority as "new matter." The SJA complied with the requirement to provide new matter to the appellant and allow for the appellant to respond. The appellant was provided the due process required by law. *See United States v. Bartlett*, 64 M.J. 641, 649 (Army Ct. Crim. App. 2007) ("Recognizing that the victim clemency matters in this case were authorized communications to the convening authority, . . . [s]erving victim clemency correspondence on the accused for comment before convening authority action protects an accused's due process rights under the Rules for Courts-Martial and preserves the actual and perceived fairness of the military justice system."). Accordingly, we find no error.

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred.[4]  Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c).  Accordingly, the approved findings and sentence are **AFFIRMED.**

FOR THE COURT

STEVEN LUCAS
Clerk of the Court

---

[4]  We note the court-martial order (CMO), dated 25 March 2014, failed to correctly capture the pleas and findings for Charge III, Specification 6.  *See* Air Force Instruction 51-201, *Administration of Military Justice*, ¶ 10.8.2.2 (6 June 2013).  We order promulgation of a corrected CMO to appropriately capture the pleas entered at arraignment and the change of plea during the providence inquiry.